**GALVESTON, H. & S. A. RY. CO. et al. v. MURPHY et al. (No. 9006.)**

Court of Civil Appeals of Texas. Galveston. June 30, 1927.

Rehearing Denied July 23, 1927.

1. Railroads ⬤⟹350(5)—Whether ordinary care required railroad to place flagman or warning devices at crossing where one train passed daily held for jury.

Whether ordinary care required railroad to place a flagman or install special warning devices at a crossing over which but one train passed daily, where public gatherings in vicinity caused increase in street traffic, held for jury, on consideration of all surrounding circumstances.

2. Railroads ⬤⟹350(7)—Whether blowing engine whistle at certain distances from crossing was reasonable warning held for jury.

Whether blowing of whistle on engine, pushing train of 19 freight cars, at distances of 3,-120, 2,552, 1,875, and 650 feet from crossing, on a rainy night, was reasonable warning by whistle of train's approach held, under the evidence, for jury.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Walter Murphy and another against the Galveston, Harrisburg & San Antonio Railway Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood, Garrison & Watson, and John T. Garrison, all of Houston, for appellants.

Bryan, Colgin, Suhr & Bering, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellees to recover damages for the loss of their minor son, whose death is alleged to have been caused by the negligence of appellant and its employees.

Plaintiffs' son, Charles Edward Murphy, was killed in the collision of an automobile, in which he was riding, with a train operated by appellant on its railroad in the city of Harrisburg. The accident occurred on the night of December 5, 1924. The deceased was riding in an automobile driven by his uncle, in whose care he had been placed by his parents, and while crossing the track of the appellant railway on Elm street, in the city of Harrisburg, the automobile was struck and the boy killed by a train on appellant's track which was being pushed across the street by a switch engine.

Numerous grounds of negligence are alleged in the petition, among which were the failure of the operatives of the train to give proper warning of its approach by ringing the bell and blowing the whistle of the engine, and the failure of appellant to have a flagman or to place some mechanical device at the street crossing to give warning of the approach of the train to persons on the street about to pass over the railway track.

The defendant answered by general demurrer and numerous special exceptions, the nature of which are not material to the issues presented by this appeal.

It further answered by general denial and by plea of contributory negligence on the part of the deceased and his uncle, Charles Murphy, the driver of the automobile, in failing to stop the automobile, and in not looking and listening for the approaching train, and in driving the automobile at an excessive rate of speed as it approached the crossing.

The cause was submitted to a jury upon special issues, all of which were found in favor of appellant except the issues of negligence in failing to give proper warning by blowing the whistle of the engine, and in failing to have a flagman or some mechanical device at the crossing to give warning of the approach of the train, and the issue of contributory negligence. Each of these three issues was found in favor of appellees, and upon return of such verdict judgment was rendered in their favor for the sum of $2,500, the amount

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

found by the jury to be reasonable compensation for appellees' loss.

The issues of negligence found by the jury to have been the proximate causes of the death of the boy are thus alleged in plaintiffs' petition:

"In then and there negligently failing and omitting to blow the whistle as said freight cars were nearing and approaching said crossing, and especially in failing and omitting to blow the whistle as the leading car of said freight train was within a distance of approximately between 100 and 200 feet from said crossing. * * *

"That the crossing in question, which was a public crossing, was at the time of the aforesaid collision in consequence of the conditions surrounding same, as well as the amount of traffic over said crossing and the frequency with which pedestrians passed over same during all periods of the day and especially during the time and hour of the collision, and in consequence of the obstructions existing at said public crossing, same being in effect what is known as a blind corner, and in connection with the facts above recited in this paragraph the darkness prevailing at night increased by large black clouds and falling rain, as well as on account of the many other railroad tracks within a proximity of 750 to 2,-000 feet, going in different directions, and on which tracks near said public crossing or not remote therefrom whistles and bells should be blown and rung by said other railroad trains, and a person about to cross over said public crossing, hearing the ringing of a bell or the blowing of a whistle on the track which he was about to cross, might reasonably be led to think and believe that said whistle and said bell which he heard on an engine which was 19 cars down the track was in fact the bell or the whistle of one of the trains on some of these other railroad tracks mentioned herein within a proximity of 750 or 2,000 feet, and all of these facts, taken separately and aggregately in connection with said blind corner and in connection with the great amount of traffic going over said public crossing at said time of the night, including pedestrians and automobiles and buggies, rendered and constituted the public crossing in question a peculiarly and specially dangerous and hazardous crossing, and so much so that the defendants and each of them, and in the alternative, the said Galveston, Harrisburg & San Antonio Railway Company, and further in the alternative, the said Texas & New Orleans Railway Company, should, in the exercise of ordinary care, have decided upon and maintained thereat at the time and on the occasion in question, a flagman, switchman, or watchman to give warning to traffic, including the driver of said automobile and said deceased, or should have maintained thereat some mechanical device or signal to warn those passing at such crossing of the danger of approaching trains; but that the said defendants, and each of them, and in the alternative, the said Galveston, Harrisburg & San Antonio Railway Company, and further in the alternative, the said Texas & New Orleans Railroad Company, whose duty it was to do so, negligently and wantonly failed and omitted to take any precautions whatsoever, or to give such warning or to provide either a flagman, switchman, or watchman at said place and public crossing, or to install or have in operation certain mechanical device or signal as aforesaid."

The evidence shows that the railway track which crosses Elm street at the place of the collision was a switch track and usually used by appellant only once each day for switching its trains, the time of such use being between 6 and 10 o'clock p. m. The accident in this case occurred about 8:40 p. m. This crossing is in the negro residential section of the city of Harrisburg. Elm street extends a few blocks beyond the crossing from the business portion of Harrisburg, and the street and crossing is the principal thoroughfare used by the residents of that section going to and from their homes and the business and other sections of the town. There is a negro church on one side of this crossing and an auditorium and schoolhouse on the other. On the night of this accident an entertainment for negroes was in progress at each of these places, and there was much passing back and forth over the crossing. The street over this crossing is generally used more during the early hours of the night than at any other portion of the 24 hours. For some time prior to this accident entertainments or public gatherings at the two places before mentioned had been held two or three times each week. There were houses on both sides of the crossing near enough to obstruct to some extent the view of the railroad track in both directions by those approaching the crossing on the street. The night was cloudy and some rain was falling, or had fallen just prior to the accident.

In submitting the issue of negligence of appellant in failing to have a flagman or some mechanical device at the crossing to give warning of the approach of the train, these questions were propounded to the jury:

"Special Issue No. 10. Was the railroad crossing at Elm street at the time and on the occasion in question, under all the facts and circumstances as you may find and believe them to be, one of special and unusual danger to persons traveling over it while using Elm street?

"Special Issue No. 11. Would an ordinarily prudent person, engaged in operating a railroad, and particularly the operation of trains over Elm street crossing, under all the facts and circumstances as you may find and believe them to be, acting in the exercise of ordinary care as that term has been hereinbefore defined, have maintained a watchman or signal or other device at or about said crossing at the particular time of the accident in question, to give warning of the danger of approaching trains?"

As explanatory of these issues, the court gave the jury the following instructions:

"You are instructed that it is not the duty of a defendant to have and maintain a watchman or flagman or other signal or device at every crossing on its track over a public street of a city or town to warn persons traveling in the street and using or about to use the crossing, and the approach of trains about to cross over the crossing at the same time.

"Whether or not it was the duty of the defendant in this case to maintain a watchman, flagman, or other signal or device at the Elm street crossing at the time of the accident in question depends upon the facts and circumstances of this particular case, and in determining this question you will consider the circumstances and conditions, if any, in evidence, existing and surrounding the crossing in question, and at and before the time of the death of the said Charles Edward Murphy, and whether the use of the crossing by the public traveling in the street exercising ordinary care for their own safety in crossing the railroad at said crossing, and passing over the crossing of engine and cars of the defendant's said railway, rendered the crossing extremely hazardous and peculiarly dangerous to the persons who used said crossing at said place in question by the use of ordinary care for their own safety in so doing, and whether the defendant knew or in the exercise of ordinary care could have known of such circumstances, conditions, and dangers, if any, there were at and before the time in question, and whether an ordinarily prudent person, in the same or similar circumstances, would have stationed and maintained a watchman or flagman or other signal or device at said crossing to warn persons using or about to use the crossing of the approach of engines or cars on said railway about to pass over the crossing at the same time."

[1] Appellant complains of this charge in the first proposition in its brief, which is:

"As to whether or not a particular crossing is extraordinarily dangerous does not depend upon the particular facts and circumstances surrounding the accident unless the agents, servants, and employees of the defendant knew of such particular facts as rendered said crossing dangerous; and the undisputed facts show that the crossing at Elm street was not a much used crossing unless special entertainments were given by the colored people; that only one train a day passed over said crossing. These facts were not sufficient to raise the issue that said crossing at Elm street was a much used crossing, such as required the defendant to maintain a watchman or install special devices for the protection of the public."

We do not think this objection to the charge should be sustained. If the appellant or the operatives of the train knew, at the time the train was moved over the street, of the public gatherings at the church and schoolhouse, respectively, and the resulting increase in the number of persons using the street at the time, we cannot hold, under all the facts and circumstances shown by the evidence, as a matter of law that ordinary care did not require that a flagman should be placed at the crossing to warn those using the street that the long train of cars was about to be moved over the street.

This charge is not the same as the charge discussed and disapproved by this court in the case of Railway Co. v. Burr, 291 S. W. 299, which was a suit for damages sustained in a train and automobile collision which occurred at the same time and place as the collision involved in this case. We have no doubt of the soundness of our holding in that case, as the charge there under consideration did not, as does the charge in this case, instruct the jury to only consider upon the question of whether the conditions surrounding the crossing at the time of the accident were such that ordinary care required the presence of a flagman, such circumstances and conditions as were known to appellant or could have been known by the exercise of ordinary care. We think the evidence raised the issues submitted and that they were properly submitted by the charge before set out.

[2] Appellant next complains of the charge submitting to the jury the following issue:

"Did the switching crew, on the occasion in question, fail to give reasonable warning by blowing the whistle as said cars approached said crossing?"

The evidence shows that there were 19 freight cars in the train, each of which was 40 feet long. The jury found that the statutory whistle was blown when the train was not less than 3,120 feet from the crossing. The evidence shows that the whistle was blown when the engine was 2,552 feet from the crossing and when it was 1,875 feet, and the third time when within 650 feet of the crossing. The train was backing, and as it neared the crossing was moving by its own momentum, the power from the engine not being applied. This made the noise of its approach less noticeable than usual. Under all the circumstances existing at the time, it was for the jury to say whether ordinary care required that the whistle of the engine be blown oftener than it was shown by the evidence to have been blown.

In considering a similar state of facts, this court, in the case of Railway Co. v. Cunningham, 168 S. W. 431, said:

"It was for the jury to say under the facts whether ordinary care upon the part of the defendant, considering the situation of the crossing, and of the blocked track that obscured the vision of one approaching did not require the air whistle signal to be sounded continuously after the train was set in motion, or at more frequent intervals."

We think the case cited is conclusive against appellant's contention that the submission of this issue was erroneous.

Appellant under an appropriate proposition further complains of the refusal of the court to submit several special charges requested by it upon the issue of contributory negligence.

It would serve no useful purpose to set out or discuss these requested charges in detail. It is sufficient to say that, in so far as they correctly submitted the issues of contributory negligence raised by the evidence, they were included in the charge given by the court.

We find no error in the record which requires a reversal of the judgment. It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.