## BAILEY et al. v. WALKER.
### No. 11416.

Court of Civil Appeals of Texas. Galveston.
July 1, 1942.

Rehearing Denied July 30, 1942.

Kemper, Hicks & Cramer, of Houston (F. Warren Hicks, of Houston, of counsel), for appellants.

John C. Henderson, of Angleton, for appellee.

GRAVES, Justice.

This statement from appellants' brief, adopted by the appellee, is accepted as a compliance with Rule 418(a), Texas Rules of Civil Procedure:

"This is a damage suit. Robert Walker, a passenger in a car being driven by his co-plaintiff, Harold Rush, brought suit in the district court of Brasoria County, Tex-

as, against G. A. Bailey and A. L. Bailey, alleged to be doing business as partners under the name of G. A. Bailey & Son, for damages alleged to have been sustained as the result of the car in which he was riding having been driven into the trailer portion of a truck alleged to belong to the defendants, while same was parked completely off the paved portion of the highway on the north shoulder of the Alvin-Galveston highway. The case was transferred to the district court of Matagorda County on plea of privilege, where trial upon the merits before a jury, upon special issues, resulted in a verdict against the plaintiff, Harold Rush. After overruling defendants' motion for judgment non obstante veredicto, as well as defendants' motion for judgment notwithstanding the jury's answers to special issues Nos. 9 and 10, judgment was rendered for the plaintiff, Robert Walker, in the sum of One Thousand Nine Hundred Thirty-Three and 50/100 ($1,933.50) Dollars, on the verdict of the jury.

"The judgment, as well as the orders overruling defendants' motions for judgment, were entered on the 29th day of January, 1942. The term of the district court of Matagorda County ended on January 30th, and consequently it was not necessary to file a motion for a new trial. At the time of the entry of the judgment, as well as at the time of the Court's overruling defendants' motions for judgment, defendants gave notice of appeal, and duly and timely filed supersedeas bond on appeal. Harold Rush, the other plaintiff in the case, was denied any recovery on the verdict of the jury in the judgment rendered by the trial court, and has perfected no appeal."

Appellants' controlling points on appeal, while extended to seven in number, converge into these two main contentions:

(1) The court erred in refusing—at their request—to disregard the jury's answers to submitted issues 9 and 10, on the ground that there was no evidence to sustain either;

(2) The court further erred in overruling their seasonably presented motions for instructed verdict and judgment non obstante veredicto, on the ground that the appellee Walker was undisputedly shown to have been guilty of contributory negligence as a matter of law.

In other words, they earnestly and ably urge that this record conclusively shows, primarily, that there was no evidence of any actionable negligence on the part of their truck driver, and, secondarily, that "the undisputed evidence leaves no room for disagreement among reasonable minds that Walker's own negligence caused, or contributed to cause, the injuries received by him."

Neither of these presentments, it is determined, should be sustained, considering the condition this court finds the record to be in; at the very threshold, this résumé of at least the controlling circumstances under which the collision was shown to have occurred gives the resulting picture a decidedly different perspective from that appellants' brief alone reflects, to-wit:

On the night of June 1, 1941, around midnight, Harold Rush and the appellee, Robert Walker, were returning in a westerly direction from the Kit Kat Cafe on the Alvin-Galveston Highway to their home in Angleton, Texas, in an automobile driven by Harold Rush. About three miles east of Alvin, while driving at a rate of speed of from thirty to sixty miles an hour, they left the paved portion of the highway, and ran into the truck belonging to the appellant, G. A. Bailey, while it was parked on the north shoulder of the highway and completely off the paved portion, with its cab and the brightly-burning lights thereof pointing eastwardly toward Galveston, while its long trailer—loaded with cattle—extended back northward from and almost at right angles with the cab, across the ditch paralleling the north line of the highway, and practically to the fence on the outer line of the right-of-way. Appellants' truck was thus parked on its own left-hand side of the highway looking toward Galveston, with its lights shining—slightly obliquely—in the eyes of anyone approaching along the highway from Galveston, which was the route being travelled by the appellee at the time of this accident, the bed or trailer of the truck being "jack-knifed" at an approximate right-angle to the cab thereof, the cab and trailer together occupying practically all of the highway between the paved portion and the fence on the north right-of-way line of the road. The cab's headlights were shining eastward down the highway in such a manner as to blind one approaching the truck from Galveston. A witness for appellee, who drove down the highway from Galveston, testified that he observed the wreck shortly after it had occurred, but after flares

had already been put out in the vicinity of the truck. He testified that the lights of the truck blinded him, and that he could not see its bed as he approached. His car was a 1940 model Chrysler, equipped with sealed-beam headlights and a spotlight. The appellee's driver, Rush, testified that he turned to his own right in an attempt to avoid a collision and allow the appellants' truck to pass to his left; that is, he explained that he "took to the ditch", in an attempt to avoid a head-on collision. Both he and the appellee testified they could not tell what the object, whose lights they saw, was, whether or not it was moving or stationary, or the position in the highway it occupied.

■ In such an apparent exigency, the right turn was at least the privilege—if not indeed the bounden duty of the appellee and his driver—in the exercise of due care for their own as well as the safety of other possible travellers on the highway, under the requirement of Article 801 (B), Penal Code of Texas, that "vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other one-half of the road as nearly as possible."

■ The testimony further was sufficient to support a finding of ample time and opportunity within which appellants might have put out flares before, instead of quickly after, the collision, in that their truck had been parked across on the south side of the road from the place of the collision for several minutes, during which period their driver did get out of his truck and was then informed of the location where he was to park it, which was the place where the collision occurred.

While there was much testimony and many specific findings of the jury in response to a cross-examination of them in some 91 special issues submitted, none of their findings, nor any undisputed evidence aliunde, in the opinion of this court, materially alter the gist of the facts as a whole, as above given.

Since, as appellants point out, from this vast body of inquiries submitted, the jury exonerated their driver from all negligence alleged, except the failure to have flares near or in the vicinity of their truck at the time of the collision, and since it also acquitted the appellee Walker of all the acts of contributory negligence they charged against him, the questions upon appeal are properly limited to those they so present.

Those two issues, together with the jury's answers, were these:

"No. 9. Do you find from a preponderance of the evidence that the failure to have flares near or in the vicinity of defendants' truck just prior to and at the time of the collision was negligence, as that term has been defined for you?" Answer: "Yes".

"No. 10. Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause, as that term has been herein defined for you, of the collision in question?" Answer: "Yes".

In pressing their position that neither of these findings could have bound them, as a matter of law, upon what they termed to have been the undisputed evidence to a contrary purport, they—in substance—urge that their truck at and for just "one or two minutes" before the collision had been placed, with its long trailer filled with cattle, against the fence on the north line of the north shoulder of the highway, completely off of the paved or "main travelled portion" thereof, with its attached coupe, both still north of the pavement, turned east toward Galveston at such an angle that its lights, which pointed in that general direction, neither could nor did blind anybody approaching on the north side of the highway from Galveston; that since the truck had only been in that position "one or two minutes" before the collision occurred, the failure to put out flares at or near it, even had there been sufficient time to do so, was not a violation of Penal Code 827a, Section 9-a, Vernon's Penal Code of the State of Texas.

Their view is that, since that penal statute only requires a driver to put out flares at night when his truck is stopped upon the "main travelled portion" of the highway for as long as 15 minutes, as a matter of law he cannot be negligent in failing to put out flares at any other time or under any other conditions—hence the statutory duty thereby imposed became the sole measure of appellants' obligations as to that particular precaution.

To sustain that contention they rely upon this court's holding in Larsen v. Halliburton, etc., Co., 105 S.W.2d 368, 369, writ of error refused; but, under the facts here so obtaining, this court sees no analogy

between the specific holding in the Larsen case and the controlling situation here presented. That decision simply expounded and applied Article 6701 c, par. 2, subsection (c), Vernon's Texas Civil Statutes, upon the conclusion of law that it did not authorize the predication of contributory negligence of a bicycle-rider on whether or not he had carried lights alone, when the law required either a lamp or a mirror in front as well as in the rear of the wheel, but did not require both at either end; it further deduced from the application of that strictly penal statute to the described conditions, and no others, the principle that "the statutory duty thereby imposed, became the sole measure of the [bicycle-rider's] obligation as to that particular precaution."

That situation is a far cry from the one at bar. The different Penal Code Article here interposed, Article 827a, Section 9a, dissimilarly, did not require a truck driver to put out flares if parked for as long as 15 minutes or to station a flagman if parked less than 15 minutes; neither did it, by reasonable intendment nor otherwise, further prescribe that, unless parked for more than 15 minutes, he was under no duty to put out flares at all; for illustration, there are many cases holding that, although the State had by statute regulated the permissible speed of automobiles on its highways, by prescribing the maximum which could be lawfully travelled, yet one or both parties can be—in conditions negativing due care—found guilty of actionable negligence in driving at a rate of speed much below the maximum so prescribed. Cannan v. Dupree, Tex.Civ.App., 294 S. W. 298; Darden v. Denison, Tex.Civ.App., 3 S.W.2d 137; Accord Taber v. Smith, Tex.Civ.App., 26 S.W.2d 722; Morrison v. Antwine, Tex.Civ.App., 51 S.W.2d 820; McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901.

Likewise, pursuant to Article 6371, Vernon's Texas Civil Statutes, in the whistle-sounding and bell-ringing cases on the railroads, the same principle has been applied to the extent that the jury might find the Railroad Company negligent if it found that the exercise of ordinary care in the particular instance existing required the sounding of the whistle or the ringing of the bell more often and at other distances than those required by the statute. Galveston, H. & S. A. Ry. Co. v. Murphy, Tex. Civ.App., 297 S. W. 593; Galveston, H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247; Whittington v. Cameron Compress Co., Tex.Civ.App., 268 S.W. 216, 217.

 Wherefore, it is concluded that the issue as to whether or not the undisputed failure to have flares near or in the vicinity of their truck and attached trailer at the time of this collision constituted negligence on appellants' part, was a question of fact for the jury; further, that its affirmative finding upon an inquiry properly submitting that question, along with a like one presenting the remaining question of proximate cause, both of which were supported by sufficient testimony, supported the judgment rendered.

 Not only so, but that such findings rendered a judgment in appellee's favor mandatory, hence the motions for instructed verdict and for judgment notwithstanding it were properly overruled.

It may be, as the briefs of both parties indicate, that no appellate holding in Texas has been applied to the precise state of facts here presented, but it does appear that, upon states-of-fact not in legal effect differing therefrom, the courts of several sister states have decided the question in accordance with the holding here made. Whitworth v. Riley, 132 Okl. 72, 269 P. 350, 59 A.L.R. 584; Hatch v. Daniels, 96 Vt. 89, 117 A. 105; Bradley v. Clarke, 219 Ky. 438, 293 S.W. 1082; Padgett v. Brangan, 1929, 228 Ky. 440, 15 S.W.2d 277.

These pronouncements are considered to be persuasive, notwithstanding appellants' claim that they all relate to "collisions occurring on the defendant's left-hand side of the improved or travelled portion of the highway", which statement the appellee, in turn, controverts.

At all events, as indicated, it is thought that issues 9 and 10 embodied the controlling questions of fact here involved, as required by No. 279, Texas Rules of Civil Procedure, and that the jury's findings thereon upon sufficient evidence entitled the appellee to the judgment rendered.

An affirmance will, therefore, be ordered.

Affirmed.