T. F. CHRISTY et al., Petitioners,

v.

Thomas H. BLADES et al., Respondents.

No. B–1418.

Supreme Court of Texas.

Nov. 19, 1969.

Rehearing Denied Dec. 31, 1969.

Culton, Morgan, Britain & White, L. A. White, Amarillo, for petitioners.

Kolander & Templeton, Robert L. Templeton, Amarillo, for respondents.

WALKER, Justice.

This is a railroad crossing collision case. The jury found, in effect, that the truck driver violated Vernon's Ann.Civ.St. article 6701d, § 86(d), by failing to stop within fifty feet but not less than fifteen feet from the nearest rail when the train was plainly visible and in hazardous proximity to the crossing and that this failure was a proximate cause of the collision. There is evidence to support plaintiffs' contention that it was impossible for the driver to stop after the train became plainly visible but impossibility of compliance is not established as a matter of law. The question to be decided is whether plaintiffs are correct in their further contention that the railroad, if it wished to rely upon the statutory violation as a defense under these circumstances, had the burden of obtaining a finding that the failure to stop was negligence under the common-law standard.

Plaintiff's are Pinkney Packing Company, the owner, and Thomas H. Blades, the driver, of the vehicle involved in the collision. Defendants are Fort Worth and Denver Railway Company and its engineer, T. F. Christy. The trial court rendered judgment on the verdict for defendants. The Court of Civil Appeals reversed and rendered judgment for plaintiffs. 437 S.W.2d 376. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The accident occurred on Browning Street in Amarillo at about 1:30 o'clock p. m. The street is crossed by six railroad tracks, which run in an easterly and westerly direction. Pinkney's plant is located on Browning Street immediately north of the tracks. A short time before the collision, Blades parked his loaded truck at the plant and went into the office. After completing his business there, Blades reentered the truck and drove in a southerly direction across the tracks. The truck and its trailer were fifty two feet in length overall and weighed 65,000 pounds loaded. Estimates of the truck's speed vary from three to

seven or eight miles per hour. The truck was struck by a switch engine pulling thirteen freight cars in an easterly direction on the fifth track from the north. The train was moving at an estimated speed of approximately five miles per hour. Blade's view of the approaching train was obscured, for some time at least, by seven box cars spotted on the fourth track. The east end of this string of cars was about twelve or fifteen feet west of the west line of Browning Street. The distance between the fourth and fifth tracks is 37.8 feet. The fifth track is not parallel to the tracks north of it but curves from southwest to northeast as it approaches and crosses Browning Street from the west. Blades had an unrestricted view of the train before his vehicle reached the fourth track, and the evidence will support the conclusion that he could have complied with the statute after the train was plainly visible to one in his position.

In response to the primary negligence and discovered peril issues, the jury: (1) found that the crossing was extrahazardous for traffic traveling south when a train was approaching from the west on the fifth track; (2) found that the collision was proximately caused by the railroad's negligence in leaving the box cars on the fourth track and in failing to have a flagman at the crossing; (3) found that the engineer discovered Blades in a position of peril and realized he would probably not be able to extricate himself, but refused to find that the discovery was in time to avoid the collision; and (4) refused to find that the engineer failed to sound the bell or horn or that the failure to have an automatic signal device at the crossing was negligence. In response to the common-law contributory negligence issue, the jury refused to find that Blades failed to listen for an approaching train, failed to keep a proper lookout, or saw the engine in time to avoid the accident by applying his brakes.

Defendants alleged that the accident was proximately caused by the negligence of Blades in failing to stop his vehicle within fifty feet but not less than fifteen feet from the nearest rail as required by Article 6701d, § 86(d), when the approaching train was plainly visible and in hazardous proximity to the crossing. The issues submitting this defense and the answers of the jury were as follows:

### SPECIAL ISSUE NO. 10

(a) Do you find from a preponderance of the evidence that the defendants' train was plainly visible before the Pinkney Packing Company truck reached a point fifteen feet from the nearest rail of the track?

Answer "Yes" or "No"

In connection with your answer to this subdivision you are instructed that the defendants' train was "plainly visible," if it was, when a reasonably prudent person, situated as was the plaintiff, Thomas H. Blades, and exercising ordinary care for his own safety, should have seen it.

Answer: Yes

(b) Do you find from a preponderance of the evidence that the defendants' train was in hazardous proximity to the crossing in question before the Pinkney Packing Company truck reached a point fifteen feet from the nearest rail of the track?

Answer "Yes" or "No"

In connection with your answer to this subdivision you are instructed that the defendants' train was "in hazardous proximity" to the crossing, if it was, when, under all the surrounding facts and circumstances in evidence, the speed and nearness of the train was such that a reasonably prudent person, situated as was the plaintiff, Thomas H. Blades, in the exercise of ordinary care, should have known that an attempt to proceed over the crossing ahead of the train was hazardous.

Answer: Yes

(c) Do you find from a preponderance of the evidence that the failure of the plaintiff, Thomas H. Blades, to stop the Pinkney Packing Company truck within fifty feet, but not less than fifteen feet from the nearest rail of the track was a proximate cause of the collision in question?

Answer "Yes" or "No"

Answer: Yes

For the purpose of this opinion, we assume without deciding that impossibility of complying with the statute because of lack of time within which to do so will excuse the violation. See Restatement, Second, Torts § 288A. Although the issue is raised by the evidence, the jury was not given an opportunity to determine whether it was impossible for Blades, by the exercise of ordinary care after the train became plainly visible and in hazardous proximity to the crossing to stop his truck as required by the statute. Plaintiffs requested no additional issues or instructions but did make the following objection to the charge:

"For the further reason that there is no submission of the question of negligence in a failure to stop at any said location on the said track."

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for plaintiffs because it concluded that this objection was well taken. It reasoned that where the evidence raises an issue of excuse for violating the statute, the burden is on the railroad to obtain a finding that the violation was negligence under the common-law standard. There are statements in a number of opinions that seem to support this conclusion. See Hammer v. Dallas Transit Co., Tex.Sup., 400 S.W.2d 885; Cunningham v. Suggs, Tex.Civ.App., 340 S.W.2d 369 (wr. ref. n. r. e.); Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892 (wr. ref. n. r. e.); Taber v. Smith, Tex.Civ.App., 26 S.W.2d 722 (no writ).

The jury in *Hammer* found that the traveling of defendant's bus on the wrong side of the road was negligence. It appeared that the bus was out of control when it crossed the center line, and defendant insisted that this excused the vehicle's presence on the wrong side of the road unless plaintiff established some specific act or omission that caused loss of control. In rejecting this contention, we stated that:

"An analogous situation is found in instances in which one relies upon and proves the fact that his adversary violated a statutory standard. The one charged with such a violation may then go forward with the evidence and show excuse or justification for the violation. * * * But it is the one seeking to justify or excuse the violation who has the burden of going forward with the evidence. * * * When he does so, he thrusts upon the other party the burden to obtain a finding that the violation was negligence under the common-law standard. * * * The burden of persuasion on the whole case remains on the one relying upon the statutory violation. * * *"

The adverse party will need a finding of common-law negligence, of course, if a legal excuse for the violation is established by the evidence as a matter of law or by a finding of fact. There are also cases in which the existence of excuse vel non can fairly be made to turn on the jury's conclusion as to whether the actor was negligent by the reasonably prudent man standard. This is so, for example, where the statutory requirements are generally known and accepted as the minimum standard of care and the nature of the claimed excuse is such that a technical violation will not constitute negligence if a person of ordinary prudence would have violated the statute under the same or similar circumstances. Whatever the rule may be in other situations and under different statutes, however, it is our opinion that when a violation of Article 6701d, § 86(d), has been established by findings similar to those

quoted above, impossibility of compliance is not properly submitted by requiring the jury to determine whether the motorist exercised ordinary care. It is true, as pointed out by plaintiffs, that the ultimate issue of negligence, defined in terms of the common-law standard, encompasses the existence or nonexistence of excuse. If the jury finds that the motorist was negligent in failing to stop, this would necessarily include a determination either that it was not impossible for him to do so or that his inability to stop was due to his own negligence. But the converse of this statement is not true, because the jury would be free to find that the motorist was not negligent if it concluded *for any reason* that a person of ordinary prudence similarly situated would not have stopped.

A negative answer to the usual negligence issue is not a finding that it was impossible for the motorist to comply with the statute by the exercise of ordinary care after the train became plainly visible and in hazardous proximity to the crossing. It could mean only that the jurors thought a person of ordinary prudence would have elected to disobey the law under the circumstances. The jury's conclusion that the motorist was not negligent by the common-law standard is of no assistance, therefore, in determining whether the violation constitutes negligence as a matter of law for purposes of the civil action. The method of submission urged by plaintiffs would make the violation nothing more than evidence of negligence to be considered by the jury. This is the rule in some jurisdictions, but it is settled in Texas that an unexcused violation of Article 6701d, § 86 (d), constitutes negligence as a matter of law. Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931. See also Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587; Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363; San Antonio & A. P. R. Co. v. Bowles, 88 Tex. 634, 32 S.W. 880. There is no merit in the above mentioned objection to the charge, and it was properly overruled by the trial court. See Texas & P. Ry. Co. v. Davis, Tex.Civ.App., 374 S.W.2d 305 (wr. ref. n. r. e.); Southern Pac. Co. v. Alex, Tex.Civ.App., 411 S.W.2d 413 (no writ.)

The problem of submitting impossibility of compliance with Article 6701d, § 86(d), was considered by at least one legal writer shortly after our decision in *McFerrin*. On the theory that this excuse for violating the statute is legally analogous to sudden emergency, it was suggested that the motorist should have the burden of proving: (1) that after the train became plainly visible and in hazardous proximity to the crossing, he could not by the exercise of ordinary care have stopped his vehicle within fifty feet but not less than fifteen feet from the nearest rail of the track; and (2) that his inability to stop was not caused by his own negligence. Calvert, Special Issues under Article 6701d, Section 86(d), of the Texas Civil Statutes, 34 Tex. L.Rev. 971. See also Hodges, Special Issue Submission in Texas, § 25, p. 67.

We agree with these conclusions. It is also our opinion that when impossibility of compliance is raised but not conclusively shown by the evidence, the motorist must request the submission of proper excuse issues before he will be heard to complain of their omission from the charge. To establish a violation of Article 6701d, § 86(d), the railroad is required to prove conclusively or obtain findings that a train was approaching, was plainly visible and in hazardous proximity to the crossing, and that the motorist either failed to stop as required by the statute, or after having stopped, proceeded before he could do so safely. These are the elements of the offense. Once they are established and in the absence of circumstances amounting to legal justification or excuse, the motorist is guilty of negligence as a matter of law.

Defendants could gain nothing then from the submission of issues on impossibility of compliance. Their defense was

complete when the elements of the offense and causation were established by undisputed evidence and by findings of fact. It is plaintiffs who would benefit from the submission of excuse issues in this case. It is they who would rely upon favorable findings thereon to avoid the legal consequences of conduct that would otherwise be regarded as negligent. Since they requested no issues or instructions, the trial court's judgment cannot be reversed for the failure to submit proper excuse issues. Rule 279, Texas Rules of Civil Procedure; Hodges, *supra*, § 71, p. 175.

Plaintiffs have not contended on appeal that legal justification or excuse for violating the statute is established by any of the jury's findings or by the evidence as a matter of law. They did not object to Special Issue No. 10 in the trial court on the ground that the track in question was not adequately located or identified. We have considered all the points of error urged by them in the Court of Civil Appeals and find none that would warrant a reversal of the trial court's judgment. Several of their points assert that "the evidence is insufficient" to support the findings in response to Special Issue No. 10. A point of error expressed in these terms is ambiguous and can mean either that the evidence is legally insufficient or that the evidence is factually insufficient to support the finding under attack. Garza v. Alviar, Tex.Sup., 395 S.W.2d 821. From a consideration of the argument under the points and the prayer of plaintiffs' brief, it is our opinion that they present only "no evidence" contentions. All of the points of error brought to the Court of Civil Appeals raise only questions of law, and there is no reason or basis for remanding the cause to the intermediate court.

■ Any statements in the opinion of the Court of Civil Appeals suggesting that a failure to stop becomes a violation of the statute and negligence per se only where the train was "plainly visible" and in "hazardous proximity" to the crossing as a matter of law are disapproved.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

McGee, J., dissents.

McGEE, Justice (dissenting).

I respectfully dissent.

The sole question before this Court is whether the railroad, to establish the statutory defense (Article 6701d § 86(d)) must also obtain a jury finding that the truck driver failed to use ordinary care, when the plaintiff has objected to the charge for the failure to submit this issue and has introduced material evidence to show excuse or justification for his violation of the statute.

There is ample evidence to support the conclusion that a reasonably prudent man would be unable to stop after the train became plainly visible. But for the driver's prompt action in attempting to speed up the truck when he saw the approaching train, the train's engine would have struck the cab of the truck instead of the trailer.

## FACTS

The accident occurred on Browning Street in Amarillo at about 1:30 p. m. The street is crossed by six railroad tracks, which run in an east-west direction approximately parallel to each other. The accident occurred at the fifth track south of the Pinkney plant, which is located on the north side of the series of tracks. Blades' truck was 52 feet long and weighed 65,000 pounds. In the truck his head was about 9 feet off the ground. After loading, Blades stopped at the office to pick up the log book and then drove about 50 feet east and made a right turn. He proceeded only 150 feet on Browning Street, crossing four railroad tracks before being struck. (Upgrade to first track, bumpy but about the same grade the rest of the way.) On his right, there was a string of box cars on Track No. 4 (the "oil track"), with

the end of the box car extending to within 13 feet of the west side of Browning Street. The distance between the fourth and fifth (the "Wye track") was 33 feet. He pulled out from the box cars at a speed of 7 or 8 m. p. h., and he saw the train approaching. Blades testified he was 10 feet from the track when he saw the train about 10 feet away. He hit his brakes near the tracks—"knew that wouldn't do it so I jumped it as far as I could to try to jump it out of the way but I just didn't make it." The distance between the south rail of track No. 4 and the north rail of track No. 5 was 33 feet. Box cars extended over the track 2¾ feet on both sides. The truck extended some distance in front of the driver's seat behind the wheel. By the time the switch engine was visible, it was physically impossible for him to stop short of the track 15 feet; he could not stop until he was on the track. Expert testimony revealed that it would take 35 feet to stop the truck "if he got even with the boxcars and was able to see around them" with the truck approaching at 8 m. p. h. The track on which the collision occurred crossed to the south and west of the intersection as the switch engine proceeded north and east toward the intersection. The train was traveling about 5 m. p. h. The train could be stopped in about 40 feet. The engineer first saw the truck when he was about 50 or 60 feet away from it. The train moved an additional 10 feet after it hit the truck. The force of the collision knocked the trailer 30 or 40 feet from Browning Street. The engine hit at the fifth wheel—between the tractor and trailer. To complicate the already difficult situation, the engine was backing up. Blades, age 45, had been a truck driver during all of his adult life—since 1948 for Pinkney Packing Company.

## VERDICT

The jury found (1) that the crossing was extra hazardous for vehicles traveling south when a train was approaching from the west; (2) that the collision was proximately caused by the railroad's negligence in leaving the box cars on the fourth track at a location that obscured the driver's vision and in failing to have a flagman at the crossing; (3) that the engineer discovered Blades in a position of peril and realized he would probably not be able to extricate himself, but refused to find that the engineer's discovery was made in time to avoid the collision. In response to the common law contributory negligence issues, the jury *refused* to find that Blades failed to listen for the approaching train, *failed to keep a proper lookout,* or that *he saw the train in time to avoid the accident by applying the brakes.*

These jury findings together with the answers to the damage issues would support and in fact require a judgment for plaintiffs.

## NEGLIGENCE PER SE

Defendants alleged that the accident was proximately caused by the negligence of Blades in failing to stop his vehicle within 50 feet but not less than 15 feet from the nearest rail as required by Article 6701d § 86(d) when the approaching train was plainly visible and in hazardous proximity to the crossing. The issues requested by defendants and submitted by the trial court and the answers of the jury were as follows:

## SPECIAL ISSUE NO. 10

(a) Do you find from a preponderance of the evidence that the defendants' train was plainly visible before the Pinkney Packing Company truck reached a point fifteen feet from the nearest rail of the track?

Answer "Yes" or "No."

In connection with your answer to this subdivision you are instructed that the defendants' train was "plainly visible," if it was, when a reasonably prudent person, situated as was the plaintiff, Thomas H. Blades, and exercising ordinary care for his own safety, should have seen it.

Answer: Yes.

(b) Do you find from a preponderance of the evidence that the defendants' train was in hazardous proximity to the crossing in question before the Pinkney Packing Company truck reached a point fifteen feet from the nearest rail of the track?

Answer "Yes" or "No."

In connection with your answer to this subdivision you are instructed that the defendants' train was "in hazardous proximity" to the crossing, if it was, when, under all the surrounding facts and circumstances in evidence, the speed and nearness of the train was such that a reasonably prudent person, situated as was the plaintiff, Thomas H. Blades, in the exercise of ordinary care, should have known that an attempt to proceed over the crossing ahead of the train was hazardous.

Answer: Yes.

(c) Do you find from a preponderance of the evidence that the failure of the plaintiff, Thomas H. Blades, to stop the Pinkney Packing Company truck within fifty feet, but not less than fifteen feet from the nearest rail of the track was a proximate cause of the collision in question?

Answer "Yes" or "No."

Answer: Yes.

Based on the evidence and jury findings Blades has offered a valid excuse for not complying with the statute because of lack of time within which to comply. The railroad furnished that excuse. The railroad cars negligently spotted within 13 feet of the west side of Browning Street proximately caused the collision. The jury refused to find that Blades failed to listen, failed to keep a proper lookout, or that Blades saw the train in time to apply his brakes. No contention was made, and no issue was requested as to speed of the truck. In a slow moving but heavily laden truck, the driver had less than 30 feet within which to stop his truck after going past the parked railroad cars. Considering the movement of the truck, the short distance to travel and the reaction time, he could not stop in less than 35 feet. This fact was realized by the expert and by the engineer, and the jury so found. The statute would require him to stop within 15 feet—an impossibility.

The defense under Article 6701d was submitted under the doctrine of negligence per se.. As noted in the majority opinion, the evidence of excuse for not complying with the statute is ample, if not conclusive. No Texas case has been cited, nor can we find one holding that to be a valid excuse for not complying with a statute the other party must show that it was *impossible to comply*. The term "impossible" does appear in the Calvert Article. The true test is what the ordinarily reasonably prudent man would do under the circumstances. Missouri-Kansas-Texas R. R. Co. v. Mc-Ferrin, 156 Tex. 69, 291 S.W.2d 931 (1956).

The jury's answers to the effect that Blades did not fail to keep a proper lookout and that he did not see the train in time to avoid the accident, together with the findings that he was in a position of peril and a finding that the engineer realized that Blades could not extricate himself from such position of peril, when taken together would establish an excuse for Blades' violation of the statute. It was not incumbent on him to obtain further findings, in addition to those on primary negligence to establish liability.

The majority opinion says, "Although the issue is raised by the evidence, the jury was not given an opportunity to determine whether it was impossible for Blades, by the exercise of ordinary care after the train became plainly visible and in hazardous proximity to the crossing, to stop his truck as required by the statute." The previous paragraph should be answer enough to this observation. See Special Issue 11A and the jury's answer: "Do you find from a preponderance of the evidence that Blades saw the switch engine in time to avoid the

accident by applying his brakes?" The jury answered, "No."

Tracks 4 and 5 are 33 feet apart. The truck is 52 feet long. To require the truck to stop 50 feet back from one of six tracks would cause the remainder of the truck to park on another track. To stop 15 feet back of track No. 5 would be requiring the driver to stop his trailer on track No. 4.

The majority opinion neglects to discuss other objections by plaintiff to Special Issues 10, A, B & C.

"Further, the submission of subdivision (a) having in it a statutory form with regard to the phrase 'plainly visible' before the truck reached a point from the nearest rail of the track is not contemplated nor authorized under the facts of this case, *the obligation being greater than that of a common law and sole submission in this case as to negligence in failing to stop at the track in question, of the Wye track, being only a common law obligation.*"

"Furthermore, the submission of (a) and (b) being nothing more than a common law submission and a comment upon the weight of the evidence, and it infers that there was an obligation to make such a stop at said location within a specific number of feet assumes a greater obligation than the common law places upon a motorist."

"Under the facts of a case of multiple tracks, the statute for which this special issue is submitted, the series of tracks south of the north track, an affirmative finding of statutory negligence imposes no duty on the plaintiff to stop before undertaking to cross any series of tracks south of the north track as a matter of statutory duty. See T. & N. O. Railroad Co. v. Day, 159 Tex. 101, 316 S.W.2d 402 (1958)."

Where a party pleads and proves the violation of a statute, the one charged with the violation under proper pleadings may then go forward with evidence to show excuse or justification for the violation. Hammer v. Dallas Transit Co., 400 S.W. 2d 885 (Tex.Sup.1966); Black v. Boyd, 410 S.W.2d 6 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). The burden of going forward with the evidence is on the party seeking to excuse the violation. Hammer v. Dallas Transit Co., supra; Younger Bros. v. Marino, 198 S.W.2d 109, 113 (Tex.Civ.App.1946, writ ref'd n. r. e.); Jessee Produce Co. v. Ewing, 213 S.W.2d 750 (Tex.Civ.App.—Galveston 1946, no writ); Note, 27 Tex.L.Rev. 866; Calvert, Special Issues Under Article 6701(d), § 86 (d), 34 Tex.L.Rev. 971, 977.

When such evidence which would justify or excuse the statutory violation is introduced, the burden then shifts to the other party to obtain a finding that the violation was negligence under the common law standard. Hammer v. Dallas Transit Co., supra: "Cunningham v. Suggs, 340 S.W.2d 369, 374 (Tex.Civ.App. —Eastland 1960, writ ref'd n. r. e.); Taber v. Smith, 26 S.W.2d 722 (Tex.Civ.App. —Amarillo 1930, no writ); Hodges, Special Issue Submission in Texas, § 25 (1959); The burden of persuasion on the whole case remains upon the one relying upon the statutory violation. See Greiger v. Vega, 153 Tex. 498, 271 S.W.2d 85 (1954)."

The majority opinion cites two cases which do not seem to be in point. In Southern Pacific Company v. Alex, 411 S.W.2d 413 (Tex.Civ.App.—Corpus Christi 1967, no writ), the judgment of the trial court for plaintiff was reversed and rendered for overruling defendant's motion for directed verdict, and in overruling defendant's motion to disregard the jury finding that the failure of plaintiff to stop his vehicle within 50 feet of but not less than 15 feet from the nearest rail though the train was plainly visible and in hazardous proximity to the crossing was not negligence. In other words, the court held that there was no evidence of excuse or justi-

fication for the violation of the statute. The court said (416):

"We are of the opinion that the evidence did not raise issues as to whether (1) appellee could not have stopped his automobile within the statutory stopping area by the exercise of ordinary care after appellant's train became plainly visible and in hazardous proximity to the crossing, or (2) if appellee could not have so stopped, that his inability to do so was not caused by his own negligence. In this situation the trial court should have granted appellant's motion for directed verdict at the close of all the evidence. However, even if such issues had been raised by the evidence they were neither *submitted to the jury nor requested by appellant.*" i. e. Southern Pacific.

In the instant case there is evidence of excuse and justification for violation of the statute and an objection by plaintiff to the failure of the railroad to request a negligence issue in its series of defensive issues.

There is a positive finding establishing excuse or justification in this case. The jury found that the railroad was negligent in spotting railroad cars up to within 12 to 15 feet of the west side of Browning Street. It is difficult to understand why the majority concludes that a finding of no negligence on the part of Blades will not establish excuse or justification. The majority opinion says: "It is true, as pointed out by plaintiffs, that the ultimate issue of negligence, defined in terms of the common-law standard, encompasses the existence or nonexistence of excuse. If the jury finds that the motorist was negligent in failing to stop, this would necessarily include a determination either that it was not impossible for him to do so or that his inability to stop was due to his own negligence. But the converse of this statement is not true, because the jury would be free to find that the motorist was not negligent if it concluded *for any reason* that a person of ordinary prudence similarly situated

would not have stopped." We are not confined to that conclusion at all. Such an observation reveals a complete contempt for the jury system.

Judgment for plaintiff was reversed and remanded in Texas & Pacific Ry. Co. v. Davis, 374 S.W.2d 305 (Tex.Civ.App.— El Paso 1963, writ ref'd n. r. e.), because the court's charge conditionally submitted only one proximate cause issue based on an affirmative answer to four separate issues under Section 86 of Article 6701(d), Tex.Civ.Stat.Ann. The railroad was entitled to have each element of its defenses under the statute submitted to the jury in a group, separately and distinctly. Obviously, the Court of Civil Appeals was of the opinion that there were no pleadings or evidence to raise the issue of excusable negligence. Page 312: "If upon a new trial hereof, the pleadings and the evidence raise the question of excusable negligence on the part of the deceased (otherwise nonnegligent) in failing to comply with Article 6701d, we hold that the issue should be submitted to the jury under appropriate charges and instructions, in place of Special Issues Nos. 69 and 70, as submitted herein." Those issues inquired as to whether the driver failed to use ordinary care in failing to stop and if so, whether such failure was a proximate cause of the collision.

The court in the *Davis* case, supra, would require the submission of the excuse issues outlined by Chief Justice Robert W. Calvert in his law review article. The writer of that article makes this observation, 34 Tex.L.Rev. page 982: "It seems to be settled that the burden of proof on issues of 'sudden emergency' is on the one who, through the doctrine, seeks relief from the consequences of his own conduct which would otherwise be regarded as negligent. Citing Goolsbee v. Texas N. O. R.R., 150 Tex. 528, 243 S.W.2d 386, 387 (1951); Phoenix Refining Co. v. Powell, 251 S.W.2d 892, 897 (Tex.Civ.App., err. ref'd n. r. e.). For the same reasons the burden of proof should be on one who, be-

cause of impossibility of compliance, claims relief from the legal consequences that would otherwise flow from his violation of the statute."

In the *Davis* case there was no jury finding that the crossing was a hazardous one, and the opinion does not relate facts or evidence to this effect.

It should be noted that sudden emergency was not relied upon by plaintiff in the *Phoenix Refining Company* case. As a matter of fact—Phoenix failed to recover judgment for the loss of its truck because it failed to obtain a jury finding that the driver of the Powell truck was *negligent* in driving on the wrong side of the highway (negligence per se). The burden was placed on the plaintiff to obtain a finding of negligence. It was the defendant Powell relying on the excuse of justification for his statutory violation (tire blow-out). In the instant case the defendant railroad spotted the cars in such a location as to give rise to the excuse. By its own acts this defendant created a situation that prevented Blades from seeing the engine in time to stop short of the track. This defendant railroad spotted its cars in such a location that its own engineer could not see the approaching truck in time to avoid hitting the trailer.

In the Goolsbee case, supra, sudden emergency was the theory upon which plaintiff relied.

In the instant case, negligence per se (under Calvert's analogy) is being used defensively. The burden of proof is upon the party pleading sudden emergency whether he be the plaintiff or the defendant; likewise, all of the Texas cases have held that where evidence of excuse or justification has been introduced, the burden is upon the party pleading negligence per se to submit and obtain an affirmative finding of negligence against the party claiming excuse. Since the defendant railroad requested no negligence issue in connection with its series of negligence per se issues, and the plaintiff objected to such failure

under Rule 279, Tex.Rules Civ.Procedure, I would affirm the judgment of the Court of Civil Appeals in rendering judgment for the plaintiff.

On page 9 of the majority opinion, we find this erroneous statement: "Plaintiffs have not contended on appeal that legal justification or excuse for violating the statute is established by any of the jury's findings or by the evidence as a matter of law." We read the following objection to Special Issue No. 10: "The evidence is uncontroverted that the visibility of the train was obscured by the boxcars placed upon the track north of the 'wye' track by the actions of the defendant; therefore, as a matter of law, they are not entitled to submission of such issue because the prerequisite of plainly visible does not exist."

Plaintiff's motion for judgment, Paragraph III states:

"Plaintiffs further say that the court should disregard the finding of Special Issue No. 10(a), (b), and (c), because such findings have no support in the evidence and because there is no evidence to raise such issue and no evidence to support such a finding of the jury, and that the uncontradicted and undisputed evidence establishes that there was insufficient time for the truck, with its weight and with the area of visibility, to stop once the driver could physically see down the wye track."

In any event, the case should be remanded to the trial court in the interest of justice. The trial court erred in not submitting a negligence issue in the defensive issues of negligence per se. The trial court erred in failing to identify the track involved in Special Issue No. 10, despite the proper objection and request for such issue. The trial court erred in failing to track the statute in Special Issue No. 10. This issue should have read as follows: "Do you find from a preponderance of the evidence that the defendant's train was plainly visible before the Pinkney Packing Company truck was more than fifty feet

from the nearest track on which the train was approaching?" Obviously, the Legislature contemplated that the train must be visible at some distance in excess of fifty feet from the nearest track on which the train is traveling, to allow for the motorist's reaction time within which to apply his brakes, before requiring the motorist to stop within the required zone. Under this charge, the defendant failed to establish negligence per se.

In Special Issue No. 2 the jury found that conditions at the crossing were such as to make it an extra hazardous crossing for traffic traveling toward it from the north when a train was approaching the crossing from the west and on the "wye" (5th) track. Note that the issue specifically identifies the track involved. The accident occurred on the 5th or "wye" track. The tenth issue asks whether defendant's train was plainly visible before the plaintiff's truck reached a point fifteen feet from the nearest rail of the track, but does not identify the track about which inquiry is made. By assuming that the jury meant that the train was visible and in dangerous proximity at the same time and place ignores the wording of the issues actually submitted to the jury. The trial court and this Court are in effect, after the verdict has been received, inserting the word "wye" or "fifth" in Special Issue No. 10 to read: "Was the defendant's train plainly visible before the truck reached a point fifteen feet from the nearest rail of the 'wye' track?"

This Court has said: "Where a collision occurs at a grade crossing of a series of tracks, the inquiry should be confined to the nearest rail of the track *on which the train was approaching*," Texas and New Orleans Railroad v. Day, 159 Tex. 101, 316 S.W.2d 402 (1958), and this was the basis for reversing and remanding the case.

Throughout the objections to the charge, the motion for new trial, and its brief in the Court of Civil Appeals the plaintiff has complained that the charge places an im-

proper burden or duty upon plaintiff in a multiple track situation.

The plaintiff made the following objections to Special Issue No. 10:

"The plaintiff objects and excepts to the submission of Special Issue No. 10, first for the reason that the answering of (b) is not conditioned upon an affirmative answer to (a) and the answering of (c) is not conditioned upon an affirmative answer to (b), it being clear that no duty arises under such circumstances until the prerequisite of visibility and after hazardous proximity has been determined.

"For the further reason that the uncontroverted testimony in this case shows that the plaintiff did stop within 15 to 50 feet to the nearest *rail* before proceeding; or at least it is a controverted fact: Special Issue 10(c) assumes a matter that is at least a controverted fact; although we believe that it is uncontroverted that he did stop within 50 but not less than 15 feet of the nearest rail of the crossing.

"Furthermore, the submission of the issue in statutory form places an impossible burden and an impossible obligation or an unreasonable obligation on the plaintiff in this case. Under the facts, there being six tracks and the truck being some 52 feet in length, and the instruction of the statute, if taken as literally read would in effect by the location of the tracks in this case place part of the truck upon an existing railroad track and require him to stop while a portion of the truck was upon all or a portion of some other track, creating a much greater danger by stopping. The statute *never* was intended to place such an obligation on the plaintiff in a *multiple track* such as this.

"Further, the submission of subdivision (a) having in it a statutory form with regard to the phrase 'plainly visible' before the truck reached a point from the nearest rail of the track is not contemplated nor authorized under the facts of

this case, the obligation being greater than that of a common law and sole submission in this case as to negligence in failing to stop at the track in question, of the wye track, being only a common law obligation.

"And for the further reason that such submission places an impossible obligation on the part of any motorist crossing a multiple track to stop within 15 feet of the track on the crossing and that any such submission restricted to the minimum point of 15 feet creates an unreasonable and impossible obligation upon any motorist upon a multiple track.

"And the definition is not restricted * * * not define it nor does it state the *area,* the *location* and the *place* where any such obligation would or would not arise under the facts and circumstances of this case.

"Furthermore, the evidence is insufficient on the occasion in question to show that when the truck was 15 feet from the nearest rail of the track that the train was plainly visible. The evidence is uncontroverted that the visibility of the train was obscured by the boxcars placed upon the track north of the wye track by the actions of the defendant; therefore, as a matter of law, they are not entitled to a submission of such issue because the prerequisite of plainly visible does not exist.

"Furthermore, the submission of (a) and (b) being nothing more than a common law submission and a comment upon the weight of the evidence, and it infers that there was an obligation to make such a stop at said location within a specific number of feet assumes a greater obligation than the common law places upon a motorist.

"Also the definition of hazardous proximity places upon him a greater obligation with regard to the *statutory stop* than would exist under the facts of this case.

"For the further reason that there is no submission of the question of negligence in a failure to stop at any said location on the said track.

"Under the facts of a case of multiple tracks, the statute for which this special issue is submitted, the series of tracks south of the north track, an affirmative finding of statutory negligence imposes no duty on the plaintiff to stop before undertaking to cross any series of tracks south of the north track as a matter of statutory duty."

Plaintiff's motion for new trial says:

(8) "The court erred in overruling plaintiff's objection to Special Issue No. 10, subdivision (a), that the nearest rail of the track was *not defined* at the set of multiple tracks in question."

See points of error 23, 24, 25, and 26 and argument:

"23. The court erred in denying plaintiffs' objection to Special Issue No. 10, subdivision (a), that the nearest rail of the track was *not defined* at the set of multiple tracks in question.

"24. The court erred in submitting Special Issue No. 10, subdivision (a), because it did not *locate the track* from which the question '*plainly visible 15 feet* before was to be determined.

"25. The court erred in overruling plaintiffs' objection to Special Issue No. 10, subdivision (a), that the phrase 'plainly visible before the truck reached a point from the nearest rail of the track' was not clear nor authorized under the facts of the case in that it was *not restricted* in failing to *define nor state the area,* the location, or the place on said tracks where such visibility question would or would not arise under the facts and circumstances of the case.

"26. The court erred in overruling plaintiffs' objection to Special Issue No. 10, subdivision (a), that the nearest rail of the track was *not defined* at the set of multiple tracks in question."

ARGUMENT

"The above points of error, because of their interrelationship, will be argued together.

"The above points all relate to the failure of the court to define the term 'nearest rail of the track' in Special Issue No. 10, subdivision (a), (b) and (c), or stated another way, they relate to the failure of the court to locate the track where the obligation to stop arose. Although it does not appear in the record, we learned after the trial that the jury spent approximately three hours on Special Issue No. 10 and its subdivisions to try to determine the meaning of the issue and the subdivisions.

"We do not know just exactly what conclusion the jury did or did not reach or which track they decided the obligation to stop arose upon. Plaintiffs, however, were entitled to issues which would locate and define the obligation of the plaintiffs so that the case could be properly argued before the jury and the issue could be clearly stated.

"The case of Texas and New Orleans RR Co. v. Day [159 Tex. 101], 316 S.W. 2d 402, by the Supreme Court, controls this question. In that case the similar issues were submitted and an objection was lodged for the failure to locate the track where the obligation arose. The Court of Civil Appeals reversed and remanded the case for failure to confine the inquiry to the nearest rail of the track upon which the train was approaching. The Supreme Court held:

" 'It was because of the failure of the trial court to so confine the inquiry that the Court of Civil Appeals reversed and remanded. We approve the action of the Court in that respect.' "

As I interpret the briefs of both parties and the cases cited therein—it is conceded that a technical violation of a statute will not constitute primary negligence or contributory negligence where there is evidence of excuse or justification for the

violation. All of the cases cited so indicate. The majority opinion cites none to the contrary. The parties to this suit seem to concede this. The only dispute between the parties is the question of *who* has the *burden of submitting the excuse issue.*

The plaintiff contends, and the courts have so held, that once evidence of excuse or justification has been introduced, the other party can no longer rely on negligence per se (statutory violation and proximate cause) alone, but must also submit a negligence issue—in other words what the ordinary prudent person should have done under the circumstances.

On page 4 of the majority opinion the Court says: "Although the issue (excuse) is raised by the evidence, the jury was not given an opportunity to determine whether it was impossible for Blades, *by the exercise of ordinary care* after the train became plainly visible and in hazardous proximity to the crossing, to stop his truck as required by the statute." To me that would mean a negligence issue.

Plaintiff made proper objections to the proposed charge for the trial court and defendant's failure to submit such an issue. As I interpret the majority opinion, it is changing the law in two respects: No. 1— we are placing the burden on the party pleading excuse to not only prove the excuse or justification but to request the appropriate issue; No. 2—the appropriate issue is not what an ordinarily prudent person would do faced with such circumstances but whether after he is faced with these circumstances, he could not by the exercise of ordinary care have stopped his vehicle within fifty feet but not less than fifteen feet from the nearest track on which the train was traveling.

I submit that at some point of time in every railroad crossing case the train is visible and in hazardous proximity. The true inquiry is whether the plaintiff, after the train became plainly visible and in hazardous proximity to the track on which the train is traveling, could not by the exercise

of ordinary care have stopped his vehicle within fifty feet but not less than fifteen feet from the nearest rail of the track.

A stronger case on the facts could hardly be imagined. This Court, in holding that an objection to the charge, worded in compliance with case law precedent, is improper and inadequate to raise the errors of the court's charge as newly announced in this opinion, shocks my sense of fair play and justice. Since we have changed the law *after* this case has been tried, in all fairness the correct issues should be delineated by this Court and the cause reversed and remanded in the interest of justice.

This Court with regard to the failure to identify the track in Special Issue 10, as required in T&NO v. Day, is penalizing the plaintiff for inartfully wording his objection to same. Though the majority of this Court and the trial court did not understand this objection—defendant did understand it and requested the more correct issue in that regard.

The defendants object and except to the submission of Special Issue No. 10 in the manner and form submitted in that the track contemplated in subdivision (a) and (b) and (c) is not sufficiently designated and the defendant here and now requests the Court to insert the word "wye" before the word track as it appears in Special Issue No. 10 and each of its subdivisions. The rights of the parties should not be determined by a technical interpretation of the rules.

On page 4 of the majority opinion, the Court ducks one of the main points raised in this case. They say (page 4): "For the purpose of this opinion, we assume without deciding that impossibility of complying with the statute because of lack of time within which to do so will excuse the violation." Unless this Court makes a holding in this regard, the rest of the opinion seems meaningless. The effect of the majority opinion would be to say that such excuse, amply demonstrated in this case, is immaterial or that this Court is making an implied finding that the plaintiff, after the train

became visible, could have stopped before reaching the track. The majority ignores the evidence, the jury findings and the plaintiff's objection to the court's charge. The time test is what the ordinarily prudent man in the exercise of ordinary care would do under the circumstances.

Hodges, Special Issue Submission in Texas, § 25, (1959), says:

"Excused Statutory Violations:

"Ordinarily violation of a penal statute or ordinance constitutes negligence as a matter of law, but particular circumstances may amount to an excuse and deprive the otherwise prohibited conduct of that effect." 27 Tex.L.Rev. 866 (1949); 25 Tex.L.Rev. 424 (1947).

"* * *

"Evidence of circumstances excusing the violation, while precluding a finding of negligence as a matter of law, does not preclude the possibility that the conduct may nevertheless constitute common-law negligence." Fisher v. Leach, 221 S.W.2d 384 (Tex.Civ.App.—San Antonio 1949, writ ref'd n. r. e.); Killen v. Stanford, 170 S.W.2d 792 (Tex.Civ.App.—Dallas 1943, writ ref'd w. o. m.); Bailey v. Walker, 163 S.W.2d 864 (Tex.Civ.App.—Galveston 1942, writ ref'd w. o. m.).

*"If common-law negligence is raised, although there is no negligence per se in the light of the excuse, then an additional issue asking if the conduct was negligent is necessary."*

The opinion in Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App.—San Antonio 1952, writ ref'd n. r. e.) quotes the law applicable herein as reviewed by Clarence Morris with approval:

" 'In many instances * * * the substitution of the criminal proscription for the reasonably-prudent-man formula is the use of a more exact standard to accomplish with greater smoothness the results that the common law had always tried to reach. But even though the

criminal proscription normally is a good test of negligence, if it is used inflexibly in all cases it may produce some untoward results. The doctrine of negligence per se purports to rob the judge of judicial functions. It places responsibilities on a legislature that could not possibly conceive of all cases to which its proscription might apply and that has not provided for civil liability, and that, therefore, surely has not considered proper limitations and excuses. At times violation of the criminal law is not unreasonable. If the doctrine of negligence per se is applied obdurately to reasonable violators their liability can be justified only on some basis other than fault—if at all.' "

"Negligence implies fault and, 'If liability is to be extended beyond fault, the phrase "negligence per se" is, at least, a misnomer.' Morris makes the further observation that, 'some defendants guilty of breaking the criminal law should not be civilly liable and some defendants technically entitled to acquittal in criminal prosecution should be held liable in civil suits. Since civil liability has not been dealt with by the legislature, judges cannot avoid the responsibility of deciding the problems peculiar to civil liability which may remain even after the statute has been properly interpreted.'

"A statute enforcible as a penal ordinance must not necessarily be given effect as fixing civil liability for, 'If a constitutional statute, properly interpreted, enacts unwise criminal responsibility, the courts may be bound to convict in accordance with the statute. But when a damage suit judge refuses to rule that breach of a criminal statute is negligence * * * he is not disobeying the legislature's command, for the legislature has ordered criminal responsibility—not civil liability.' Morris, p. 168."

In the *Phoenix Refining Company* case, plaintiff plead that the defendant was negligent per se in driving on the wrong side of the road. He requested a negligence issue in that series of issues and the jury found *no negligence*. The excuse was that there was no negligence on defendant's part because of a suddenly deflated tire. Plaintiff on appeal contended that findings that defendant drove on the wrong side of the road and that this action was a proximate cause of the collision (negligence per se) entitled him to recover. In affirming the trial court's judgment that plaintiff take nothing, the court said:

"Undoubtedly the penal provision forbidding driving on the left-hand side of the road prescribes an appropriate standard for measuring civil liability, but this does not mean that it must be rigidly applied under any and all fact circumstances. We think the trial court was correct in so holding."

" * * *

"It would logically follow that whenever evidence is submitted tending to show that the violation of the statute was excusable or justifiable or constituted at most a mere technical violation for which civil liability should not be imposed the trial court should submit the *reasonably prudent man test in some form*. In other words, if the evidence fairly raises the issue of excuse, then, in addition to the question of the commission of a criminal act an issue embodying the reasonably *prudent man standard of negligence should be submitted*. Hicks v. Morgan, Tex.Civ.App., 259 S.W. 263; Taber v. Smith, Tex.Civ.App., 26 S.W.2d 722; Safeway Stores of Texas, Inc. v. Webb, Tex.Civ.App., 164 S.W.2d 868; Killen v. Stanford, Tex.Civ.App., 170 S.W.2d 792.

"From a reading of the cases cited, the following rules may be deducted:

1. "A violation of a penal statute which contains an appropriate standard for determining civil liability constitutes negligence as a matter of law.

2. "This rule is not inexorable. The party violating the statute may assume the

burden of going forward with the evidence and raise an issue as to an excusable violation.

3. "If said party bring forward sufficient evidence to raise the issue * * * then the issue of negligence determined by the reasonably prudent man standard should be submitted.

4. "The *burden of proof* upon this issue rests *with the party asserting negligence,* for upon him rests the burden of proof as distinguished from the burden of going forward with the evidence."

The law applicable to this case is clearly stated in Hammer v. Dallas Transit Company, 400 S.W.2d 885, 887 (Tex.Sup.1966):

"An analogous situation is found in instances in which one relies upon and proves the fact that his adversary violated a statutory standard. The one charged with such a violation may then go forward with the evidence and show excuse or justification for the violation. See Calvert, Special Issues Under Article 6701d, § 86(d), 34 Tex.L.Rev. 971, 977. But it is the one seeking to justify or excuse the violation who has the burden of going forward with the evidence. Younger Bros. v. Marino, 198 S.W.2d 109, 113 (Tex.Civ.App., 1946, writ ref. n. r. e.); Jessee Produce Co. v. Ewing, 213 S.W.2d 750 (Tex.Civ.App., 1948, no writ); Note, 27 Tex.L.Rev. 866. *When he does so, he thrusts upon* the other party *the burden to obtain a finding that the violation was negligence under the common law standard.* Cunningham v. Suggs, 340 S.W.2d 369, 374 (Tex.Civ. App. 1960, writ ref. n. r. e.); Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App., 1952, writ ref. n. r. e.) Fisher v. Leach, 221 S.W.2d 384, 390 (Tex.Civ.App., 1949, writ ref. n. r. e.); Taber v. Smith, 26 S.W.2d 722 (Tex. Civ.App., 1930, no writ); Hodges, Special Issue Submission in Texas, § 25 (1959). The burden of persuasion on the whole case remains on the one relying upon the statutory violation. See Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85 (1954)."

In Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 939 (1956), the court said: "We know of no reason for saying that the purpose of the legislature in including Sec. 86 as a part of such a comprehensive law was to give the railroads some advantage in crossing cases which they did not enjoy at common law, or was to change the common-law test of negligent conduct on the part of a motorist."

In Texas & Pac. Ry. v. Day, 145 Tex. 277, 197 S.W.2d 332, 333 (1946), Justice Simpson wrote:

"Contributory negligence barring a recovery as a matter of law is a conclusion sometimes compelled by the evidence, but such cases are relatively rare. Ordinarily this question is for the trier of facts and only becomes a matter of law for the court when but one reasonable conclusion can be drawn from all the testimony. * * * The following language from Hines v. Arrant [Tex.Civ.App., 225 S.W. 767] is especially pertinent: 'If every one injured in a railroad collision who could by looking and listening discover the approach of the train before going upon the track is to be charged with contributory negligence, it would be difficult to find an instance in which that defense would not be fully established. The situations are exceedingly rare in which travelers cannot, if they will, ascertain whether or not it is safe to attempt a crossing. But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence.' "

Reuter v. Gilbreath, 401 S.W.2d 658 (Tex. Civ.App.—Beaumont 1966) follows Hammer v. Dallas Transit Company, supra, in

holding that where the pleadings and the evidence show excuse or justification for a statutory violation, the burden shifts to the other party to obtain a finding that the violation was negligence under the common law standard. The plaintiff went forward with the evidence and showed excuse for his intended attempt to pass defendant's truck in violation of Art. 6701(d), § 57(a), par. 2. Page 667:

"When he raised the question he thrust the burden upon defendant to submit, and obtain a finding on common law negligence as a component, or subsidiary part, of Special Issues 24 and 25."

Special Issue No. 24 inquired as to whether plaintiff drove his automobile to the left side of the roadway when he was approaching within 100 feet of the intersection of Highway 287 and Myrtle Street, and Special Issue No. 25 was the causation issue. It should be noted that the jury found the plaintiff guilty of several other statutory violations, but failed to find negligence or causation involved.

Cunningham v. Suggs, 340 S.W.2d 369 (Tex.Civ.App.—Eastland 1960, writ ref'd n. r. e.). Where the defendant had turned around in paved portion of the road at night and had technically violated 6701d, the court said that his act was not necessarily negligent as a matter of law, and where evidence had raised what might have been excuses for the violation and issues on negligence had been substituted and found for the defendant, this was a finding of excuse.

In Black v. Boyd, 410 S.W.2d 6, 9 (Tex. Civ.App.—Houston 1966, writ ref'd n. r. e.), the jury found that defendant failed to yield the right of way to plaintiff; that such failure did not constitute negligence; but, that the failure was a proximate cause of the collision. The court said: "Under the circumstances we are of the opinion that the evidence raised the issue of an excusable violation and that the burden of securing a finding of negligence rested on the plaintiff."

Trochta v. Missouri, Kansas & Texas Ry. Co., 218 S.W. 1038 (Tex.Com.App. 1920), held that failure to stop, look and listen at a railroad crossing does not establish contributory negligence as a matter of law; under the evidence, this is a question for the jury. Evidence showed the driver of a wagon (deceased), when he reached the line of the right of way, about 50 feet distant from the railroad track, could have seen the train, if he had been looking in that direction, at a distance of 194 yards; that when he had proceeded fifteen feet further he could have seen the train at a distance of at least one-half mile.

See also Port Terminal Railroad Association et al. v. Noland, 288 S.W.2d 276 (Tex.Civ.App.—1956, writ ref'd).

Freeman v. Galveston H. & S. A. Ry., 285 S.W. 607 (Tex.Com.App., 1926): "There is no law requiring a continuous looking and listening. Ordinary care is the measure of one's duty."

I doubt that the Legislature intended this statute to apply in multiple track crossings.

The majority opinion completely ignores the jury's answer to Special Issue No. 2, which reads as follows:

"Do you find from a preponderance of the evidence that at the time in question the conditions at the crossing in question, if any, were such as to make it an extra-hazardous crossing for traffic travelling toward it from the north when a train was approaching the crossing from the west and on the wye track?

Answer 'yes' or 'no.'

Answer: Yes.

By the term 'extra-hazardous crossing' is meant a particular crossing which

is shown to be a more than ordinarily dangerous one, attended with unusual or extra hazards—a crossing so peculiarly dangerous that prudent persons cannot use the same with safety *unless extraordinary means* are used to protect such crossing."

The jury answered that the defendant's negligence, in failure to have a flagman at the crossing was a proximate cause of the collision. There is *no evidence* that the railroad used *extraordinary means to protect such crossing.* This issue and the jury's answer thereto have been totally ignored and disregarded by the trial court and the majority of this Court. This issue constitutes a finding of excuse. The jury has found that this was an extra hazardous crossing, a more than ordinarily dangerous one, attended with unusual or extra hazards—*a crossing so peculiarly dangerous that prudent persons cannot use the same with safety unless extraordinary means are used to protect such crossing.*

I do not find that a motion to disregard Special Issue No. 2 or a motion for judgment notwithstanding the verdict was ever filed in behalf of the railroad. Rule 301, Tex.Rules Civ.Procedure, requires a motion in both instances, notice and a hearing. The trial court and the majority of this Court have erred in disregarding this jury finding without motions, notices or hearings. Moreover, no objection to the definition given in Specal Issue No. 2 appears in the record.

I am convinced that the errors complained of amounted to such a denial of the rights of petitioner as were reasonably calculated to cause, and probably did cause the rendition of an improper judgment and was such as probably prevented the petitioner from making a proper presentation of his case to the appellate courts. Rule 503, Tex.Rules Civ.Procedure. I would reverse the judgment of the Court of Civil Appeals and remand the case to the lower court because it appears that the justice of the case demands a new trial. Rule 505, Tex.Rules Civ.Procedure.