**L. M. B. CORPORATION et al.,**
**Appellants,**

v.

**Louis GURECKY, Appellee.**

**No. 680.**

Court of Civil Appeals of Texas,
Corpus Christi.

Nov. 30, 1972.

Rehearing Denied Dec. 29, 1972.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jerry V. Walker, A. W. Krebs, Jr., Houston, for appellants.

Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, for appellee.

OPINION

BISSETT, Justice.

This is an automobile-pickup collision case. Suit was instituted by Louis Gurecky against L. M. B. Corporation to recover damages arising out of an accident when the automobile that was then being driven by him was struck by a pickup truck that was then being driven by Jose Gonzalez, an employee of defendant. The collision occurred on plaintiff's right half of the roadway. The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

The jury, in answer to Special Issues Nos. 1, 2 and 3, found that Gonzalez failed to keep the pickup truck completely within the right half of the roadway (No. 1), that such failure was not negligence (No. 2), and that such failure was a proximate cause (No. 3). The answers to Issues Nos. 2 and 3 were each conditioned upon an affirmative answer to Issue No. 1.

The trial court, upon motion by plaintiff, disregarded the answer to Special Issue No. 2 and entered judgment for plaintiff. Defendant has appealed. We affirm.

Among other defenses, defendant pleaded that Gonzalez was faced with "an emergency that was not created by him, and that he exercised ordinary care in acting under such an emergency". Excuse for the statutory violation was not pleaded.

Special Issues inquiring into "emergency" and "excuse for being on the wrong side of the road" were neither requested by defendant nor submitted by the trial judge. No one objected to the court's charge.

The collision occurred on Highway 35, in Matagorda County, Texas, in the after-

noon of September 15, 1969. The highway is asphalt surfaced, consists of two lanes with an improved shoulder adjoining the outside of each lane, and, in the area of the accident, is straight and over flat terrain. The weather was clear. The surface of the highway was dry. Immediately preceding the collision, plaintiff was proceeding west on the highway at about 55 m. p. h. and Gonzalez was proceeding east at about 60 m. p. h. Each was driving on his respective half of the roadway. As the two vehicles were approaching each other, Gonzalez's pickup weaved back and forth on the highway. When the vehicles were very close to each other, Gonzalez made a hard brake application. The pickup then skidded sideways to the left, crossed to the left of the center of the highway, turned broadside and collided with plaintiff's car. The point of impact was on the improved shoulder adjacent to plaintiff's right half of the roadway.

Gonzalez was accompanied by three men. Two were riding in the cab with him and the other was riding in the back of the pickup. None of the three testified at the trial. Gonzalez stated that when he was about four hundred feet from plaintiff's car, he had the feeling that something had gone wrong with the rear end of the pickup. He "thought" and "assumed" that the right rear tire had gone flat, but he did not hear air escaping from a tire. He said that the pickup then "veered to the right" and "when it went to the right I pulled it back to the left". At the same time he noted that there was a deep ditch to his right. He was aware of plaintiff's approaching car and was fearful of a collision with it. When asked if the pickup crossed over the lefthand side of the highway on more than one occasion just before the accident, he replied:

"I had left my lane when I was having this trouble and went into the other lane, but I had pulled back. But, upon getting closer I had applied my brakes making my back end whip around and that car ran into me."

He further testified

"Q Were you still upon the pavement when you made a hard brake application?

A Yes, sir.

Q Were you on your side of the road when you made a hard brake application?

A Yes, sir.

Q Before you made the hard brake application had your pickup truck been on the left side of the road?

A No, sir."

\* \* \* \* \* \*

"Q Did you not apply your brakes until after you had pulled it back to the left?

A When I seen this car very close I applied my brakes.

Q And, did you apply your brakes hard at that time?

A Yes, sir.

Q And was that the first time you had applied your brakes?

A First time.

Q Was the front end of your car on your side of the road when you made the hard brake application?

A Yes sir.

Q And going in a straight line?

A I was having trouble. It was weaving."

Photographs show that the pickup laid down rubber tiremarks as it skidded broadside and crashed into plaintiff's car. They began at a point in the middle of Gonzalez's lane of traffic and extended diagonally to the scene of the accident. They grew wider as they approached the site of the collision. Somewhere along the path of the tiremarks the rim of the right rear

tire started dragging. The exact beginning place was not established by the evidence, but the rim was dragging as the pickup crossed the center of the highway just before it hit plaintiff's car.

Article 6701d, Vernon's Ann.Civ.St., Sec. 52, p. 389, omitting the four exceptions, none of which are applicable to the present case, reads as follows:

"Upon all roadways the driver of a vehicle shall drive upon the right half of the roadway, except as follows:".

Defendant contends that the violation of Article 6701d, § 52, was excusable in that Gonzalez was unable to control the pickup through no negligence on his part because of a sudden deflation of its right rear tire. It asserts that it is entitled to judgment under the rule announced in Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App.—San Antonio 1952, writ ref'd n. r. e.), which it says was reaffirmed in Hammer v. Dallas Transit Company, 400 S.W.2d 885 (Tex.Sup.1966). It argues that since evidence raises the issue of excuse, the jury finding that Gonzalez was not negligent excuses the violation.

Plaintiff's contentions are, first, there is no evidence raising the issue of excuse for the violation of the statute, and, second, even if there is some evidence of such violation, legal excuse therefor was not established by the evidence as a matter of law or by a finding of fact. In connection with his first contention, plaintiff relies on Impson v. Structural Metals, Inc., 487 S.W.2d 694 (Tex.Sup.1972); in connection with his second, he relies on Christy v. Blades, 448 S.W.2d 107 (Tex.Sup.1969), and on the Impson case.

■ Excuse was not defined in either *Phoenix, Hammer* or *Christy,* but the rule in each of those cases required the party violating the statute to present some legally substantial excuse or justification. The Supreme Court, in Impson v. Structural Metals, Inc., supra, addressed itself to the sufficiency of the excuse. It set out some of the criteria to be followed in determining whether evidence that has been submitted is sufficient to raise a jury question regarding excuse. The Court approved the general treatment of legally acceptable excuse as set out in the Restatement of Torts, Second (1965) § 288A. In discussing the Restatement view, the Court indicated that a blowout of a tire would constitute a legally acceptable excuse for the statutory violation because the driver is then confronted with an "emergency not due to his own misconduct". The same holds true with respect to "a sudden deflation of a tire". However, that is so only where the sudden deflation (or blowout) itself causes the emergency and the vehicle is responding to that emergency at the time and place of the collision.

There was no blowout of a tire. Defendant admits this in its brief. It is undisputed that the right rear tire was found to be deflated after the accident, but the tire itself was intact.

There is no proof or finding that the pickup moved to the wrong side of the road just prior to the accident because of any emergency caused by a sudden deflation of the right rear tire. Neither Gonzalez nor anyone else testified that the tire suddenly went flat at any specific time or place other than the tire was found to be in a deflated condition after the collision had already occurred. The deflation could have been sudden or it could have been gradual. It could have taken place immediately before the pickup first veered to the right, or it could have happened just prior to or simultaneously with the application of the brakes, or it could have occurred while the vehicle was skidding and turning broadside. There is no evidence that the rim of the right rear tire began dragging at the place on the highway where Gonzalez first detected that something was wrong with his vehicle (when he "thought" he had a flat tire), or when the vehicle first veered to the right, or when he pulled it back to the left. Admittedly, the pickup was out of control when it

crossed over into plaintiff's lane of traffic just prior to the collision, but to hold that the evidence showed that the vehicle was at that time reacting to a suddenly deflated tire would amount to a holding based on nothing more than surmise and conjecture.

The testimony of Gonzalez that he was "having trouble" and the pickup was "weaving" at the time he made a "hard application" of the brakes does not constitute probative evidence of legally acceptable excuse within the purview of *Impson*. The "weaving" and the troubles that ensued are attributable to the manner in which he steered the vehicle, pulling it first to the left and then to the right. The evidence does not remotely show that any sudden deflation of the tire caused the pickup to "weave" from side to side as it proceeded along the highway.

■ Viewing the evidence most favorably to defendant and indulging all inferences in its favor as may reasonably be drawn therefrom, it is inescapable that the immediate cause of the accident was the deliberate hard application of the brakes by Gonzalez just before the pickup moved sharply to its left. There is no indication that such voluntary act by Gonzalez was the result of any reflex action on his part that was caused by any emergency due to a sudden deflation of the tire. When he applied the brakes the pickup was entirely on his right half of the roadway. If there was a sudden deflation of the right rear tire that caused the vehicle to swerve to the right as Gonzalez said it did when he was some distance from plaintiff's car, any loss of control occasioned thereby and at that time and place was regained before the brakes were applied. At the time the pickup last crossed to the left of the center of the highway, it was not then reacting to any sudden loss of air in the tire, but was responding to the deliberate acts of Gonzalez.

In the case before us, there is no proof that the event or condition claimed by defendant to have existed (the sudden deflation of the tire) occurred just prior to the accident, or that it, if it did occur at that time and place, caused the defendant's truck to cross into the wrong lane of traffic and collide with plaintiff's car.

In *Phoenix*, the Court concluded that the evidence was sufficient to raise the issue of excusable violation of the statute prohibiting the driving of a vehicle on the left-hand side of the road. Defendant, the one who was in the wrong lane of traffic, went forward with the evidence and *proved* that a suddenly deflated tire caused his vehicle to be on the left-hand side of the road just prior to and at the time of the accident. He *proved* an excuse for violating the statute. The Court held that under such circumstance the burden was *then* on the plaintiff to obtain a finding that the violation was negligence under the common-law standard.

The Supreme Court was not confronted with the problem of defining excuse when it decided *Hammer*. There, the excuse was that because of the wet streets, the defendant's truck unavoidably skidded out of control. The Court said the burden was on the one who violated the statute "to go forward with the evidence to *prove* not merely its own loss of control but that the loss of control was *excusable*". (Emphasis supplied) The court made no attempt to determine the legal sufficiency of the excuse claimed, but simply remanded that case to the Court of Civil Appeals because that Court had erroneously held that the defendant was under no burden to prove that its truck was excusably out of control. That burden was never met by the defendant. (See Opinion of the Court of Civil Appeals after the remand, 404 S.W.2d 85).

In both *Phoenix* and *Hammer,* each court, in effect, held that *if* the one charged with the statutory violation does go forward with the evidence and does *prove* excuse or justification for the violation, *then,* the burden of obtaining a finding that the violation was negligence under the common-law standard is thrust on the

other party. Therefore, it follows that the burden of obtaining such a finding of negligence does not become operative until the statutory violator has *first* proved an excuse for the violation.

 We follow the directions given by the Supreme Court in *Impson* and hold that Article 6701d, § 52, V.A.C.S., is a "standard of conduct" statute, not a "standard of care" statute. It establishes a rule of minimum conduct, the violation of which, in the absence of excuse or justification, establishes negligence as a matter of law. It is intended as a safety measure. The duty imposed upon the driver is absolute and does not permit any exercise of judgment on his part. No discretion or election is left to the driver.

 It is now certain that a violation of a standard of conduct statute, such as Article 6701d, § 52, is not excused by evidence that establishes no more than the exercise of ordinary care. That was clearly made evident by the Supreme Court in *Impson*. A negative answer to an issue submitting the reasonably prudent man's standard of negligence is not a finding that excuses the violation of a standard of conduct statute. Such an answer could only mean that the jury thought a person of ordinary prudence would have elected to disobey the law under the facts and circumstances presented by the evidence. The jury's finding absolving the party who violated a standard of conduct statute of common-law negligence does not aid in determining whether the violation amounts to negligence as a matter of law. That method of submitting excuse where, as in this case, there has been a violation of such a statute, would make the violation nothing more than evidence of negligence to be considered by the jury. Christy v. Blades, supra.

It was said in *Christy* that there are cases "in which the existence of excuse vel non can fairly be made to turn on the jury's conclusion as to whether the actor was negligent by the reasonably prudent

man standard". That statement, however, was limited by the Court to "standard of care" statutes, where "the nature of the claimed excuse is such that a technical violation will not constitute negligence if a person of ordinary prudence would have violated the statute under the same or similar circumstances". That statement does not apply to the case at bar, where a standard of conduct statute has been violated; neither did it control in *Christy,* where the Court had Article 6701d, § 86(d), a standard of conduct statute, before it for consideration. The same observation, in substance, was made in *Impson* where the Court said: "Mere 'ordinary care does not necessarily constitute one of the excuses ingrafted by the courts to the legislative standard'". For those reasons, in a situation involving the violation of a standard of conduct statute, the jury does not determine the negligence or non-negligence of the violator by comparison with the conduct of a reasonably prudent man, but it does determine whether or not there has been a violation of the expressed intent and will of the legislative enactment. Where there has been such a violation, negligence is established not by such comparison, but as a matter of law, absent proof of excuse or justification, 65 C.J.S. Negligence § 19(3), p. 624.

The rules announced in *Christy* and in *Impson* with respect to the establishing of legal excuse, the method of submitting excuse issues to the jury, and the burden of proof of excuse apply to the case at bar.

 We hold that where there is some evidence of legal excuse for the violation of Article 6701d, § 52, but the violation is not established as a matter of law, the party relying upon excuse or justification must obtain appropriate jury findings. In the case before us, the defendant, upon proper pleadings and evidence, would have been required to have obtained jury findings (1) that the condition or event claimed as a legal excuse occurred before its vehicle moved to the left half of the

roadway, and (2) that such condition or event caused its vehicle to move to the left half of the roadway just prior to the collision. Such issues were neither requested by defendant nor submitted to the jury by the trial judge. It necessarily follows that legal excuse for the violation was not established by a finding of fact.

It was recognized in Phoenix Refining Co. v. Powell, supra, on page 896 of the published opinion:

". . . When a violation of a criminal statute (suitable for determining civil liability) is shown and nothing more, it is wholly unnecessary to submit the reasonably-prudent-man standard of negligence. The violator of the statute is guilty of negligence as a matter of law . . . ."

That rule applies here. Only a violation of Article 6701d, § 52 and nothing more is shown by the evidence. It was, in law, an unexcused violation.

A legal excuse for the violation of Article 6701d, § 52 was not established by the evidence as a matter of law or by a finding of fact. For that reason, the jury finding that Gonzalez violated that statute establishes negligence per se, and the further finding that such violation was a proximate cause of the collision entitles plaintiff to a judgment against defendant for the damages found by the jury. The jury finding that the failure of Gonzalez to keep the pickup completely within the right half of the roadway was not negligence is immaterial. The trial court properly disregarded the jury's answer to Special Issue No. 2 and correctly rendered and entered judgment for plaintiff.

We have carefully considered all of defendant's points of error and they are overruled.

The judgment of the trial court is affirmed.

SHARPE, J., not participating.