SOUTHERN PACIFIC COMPANY et al.,
Petitioners,

v.

Aurora M. CASTRO, Individually and as next friend of minors, Sandra Castro et al., Respondents.

No. B–3141.

Supreme Court of Texas.

Jan. 10, 1973.

As Modified on Denial of Rehearing March 28, 1973.

Matthews, Nowlin, Macfarlane & Barrett, Harper Macfarlane, Luther H. Soules, III, and Ferd C. Meyer, Jr., San Antonio, Baker & Botts, Houston, Clark Murray, Floresville, for petitioners.

Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, Groce, Hebdon, Fahey & Smith, James D. Guess, Rice & Seely, Rudy Rice, Tilman R. Thomas, San Antonio, for respondents.

POPE, Justice.

Arthur Castro's widow, Aurora Castro, and their children obtained a judgment against Southern Pacific Company, its engineer, and fireman, for damages arising out of Castro's death at a railroad intersection in Floresville, Texas. The court of civil appeals affirmed the judgment of the trial court. 473 S.W.2d 577. The question presented by this appeal is whether the jury verdict will support the conclusion of the courts below that Castro's contributory negligence in violating Section 86(c) of Article 6701d, Vernon's Ann.Texas Civil Stats., was excused. We hold that it was not. We reverse the judgments below and remand the cause to the trial court in the interest of justice.

Castro was driving a truck to make deliveries of beer after dark on the evening of the collision. He approached the main line of the Southern Pacific at a time when its freight train was also approaching the same intersection. He was headed east and the train was headed south. The truck was stopped with its front wheels in the middle of the track at the time of the fatal collision.

Judgment for the plaintiffs was grounded upon jury findings that the railroad crossing was extra-hazardous, defendant was negligent in failing to provide an automatic flashing signal, the train was operating in excess of twelve miles an hour, it was operating in excess of twenty-five miles an hour, and that each omission and act of negligence was a proximate cause of the occurrence.

Southern Pacific also obtained jury findings that Castro was contributorily negligent in that he violated two of the statutory standards fixed by Section 86, Article 6701d, Vern.Tex.Civ.Stats. The provisions of section 86 which are relevant to this case provide:

Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

(a) * * *

(b) * * *

(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal *audible* from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard;

(d) An approaching train is *plainly visible* and is in hazardous proximity to such crossing. [Emphasis added.]

By the undisputed evidence Castro approached the crossing and failed to stop within fifty feet but not less than fifteen feet from the nearest rail. It was also undisputed that the engine was approaching. The trial court submitted these contributory negligence issues and to each of them the jury answered, "We do."

ISSUE NO. 22 Do you find from a preponderance of the evidence that when the engine of the train was within approximately 1,500 feet of the crossing in question it emitted a signal which was audible from that distance?

ISSUE NO. 23 Do you find from a preponderance of the evidence that the train was plainly visible before ARTHUR CASTRO reached a point fifteen feet from the nearest rail of the mainline track on which the train was approaching?

A train is "plainly visible" if a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would have seen it.

If you have answered either Issue No. 22 or Issue No. 23 "We do," then answer Issue No. 24' [sic] otherwise do not answer Issue No. 24.

ISSUE NO. 24 Do you find from a preponderance of the evidence that the train was in hazardous proximity to the crossing in question before ARTHUR CASTRO reached a point fifteen feet from the nearest rail of the mainline track on which the train was approaching?

A train is "in hazardous proximity to the crossing" if the speed or nearness of the train is such that a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would reasonably conclude that he cannot pass over the crossing without danger of collision.

If you have answered Issue No. 24 "We do," then answer Issue No. 25; otherwise do not answer Issue No. 25.

ISSUE NO. 25 Do you find from a preponderance of the evidence that the failure of ARTHUR CASTRO to stop his vehicle within fifty feet, but not less than fifteen feet, from the nearest rail of the mainline track was a proximate cause of the collision in question?

Castro was therefore contributorily negligent under the standard imposed upon him by Section 86(c), Article 6701d, because (1) it was undisputed that he failed to stop within the statutory zone, and the jury found that, (2) the engine was within 1,500 feet of the crossing when the engine emitted a signal audible from that distance, (3) the train was in hazardous proximity, and (4) Castro's failure to stop in the statutory zone was a proximate cause of the collision. Additionally, the jury found that Castro was contributorily negligent under the standard imposed upon him by section 86(d) in that (1) it was undisputed that he failed to stop within the statutory zone, and the jury found that (2) the train was plainly visible before he reached a point fifteen feet from the nearest rail of the mainline track, (3) the train was in hazardous proximity, and (4) Castro's failure to stop within the statutory zone was a proximate cause of the collision. See Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956).

Thus, Southern Pacific was successful in obtaining jury findings that Castro violated the statutory standard of section 86(c) as well as section 86(d). We observe that the trial court treated the phrase in section 86(c) "an immediate hazard" and the phrase in section 86(d) "in hazardous proximity" as synonymous and thus submitted the issue only once. We regard that as a proper practice.

We now reach the controlling problem in this case. Plaintiffs alleged that Castro's violations of the standards stated in section 86(c) and 86(d) were excused because it was impossible for him to comply. The trial court submitted two requested excuse issues, and the jury answered those issues favorably to plaintiffs' contentions. The jury answered "We do" to these issues.

ISSUE NO. 14 Do you find from a preponderance of the evidence that after the train became *plainly visible* and in

hazardous proximity to the crossing, ARTHUR CASTRO could not by the exercise of ordinary care have stopped his vehicle within fifty feet but not less than fifteen feet from the nearest rail of the mainline track.

A train is "plainly visible" if a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety would have seen it.

A train is "in hazardous proximity to the crossing" if the speed or nearness of the train is such that a driver, situated as was ARTHUR CASTRO and using ordinary care for his own safety, would reasonably conclude that he cannot pass over the crossing without danger of collision.

If you have answered Issue No. 14 "We do", then answer Issue No. 15; otherwise, do not answer Issue No. 15.

ISSUE NO. 15 Do you find from a preponderance of the evidence that the inability of ARTHUR CASTRO to stop, if any, was not caused by his own negligence.

■ Southern Pacific argues that it obtained separate findings that Castro was contributorily negligent in two particulars. He violated section 86(c) by failing to stop after the engine gave the statutory audible signal, and he also violated section 86(d) by failing to stop after the train was plainly visible. It says that special issue 14, quoted above, was tied to and limited to that time and place at which the train was *plainly visible* and that the finding on issue 14 excused Castro's violation of section 86(d) only. Southern Pacific says that section 86(c) imposed another, different, and independent duty to stop which is grounded upon an approaching driver's duty to listen; that is to stop or slow down after an engine emits an audible signal. It says that plaintiffs failed to get a finding which excused Castro's negligence under 86(c).

There is some evidence in this record that there were structures located along the highway and railroad track, and that the train was not plainly visible until it was about sixty-two feet from the crossing. A jury believing that evidence could conclude that Castro could not have stopped his vehicle in the statutory zone after the train reached that point of plain visibility. Castro, therefore, would be excused from failing to stop after the train became plainly visible. Such a finding, however, does not compel the wholly different conclusion that Castro was unable to stop after the engine emitted a signal when it was approximately 1,500 feet from the crossing.

The plaintiffs, to counter Southern Pacific's argument, begin with the factor which is common to sections 86(c) and 86(d), that of "hazardous proximity." They correctly reason that the phrases "immediate hazard" used in section 86(c) and "hazardous proximity" used in section 86(d) have the same meaning. They rely upon our decision in Texas & Pacific Railway Company v. Snider, 159 Tex. 380, 321 S.W.2d 280 (1959), in which case we held there was a conflict between the finding on an issue submitted under section 86(c) that a train *was* in hazardous proximity and a finding on another issue submitted under section 86(d) that a train *was not* in hazardous proximity. They point to the fact that the court accompanied special issue 14 with an instruction explaining the term, hazardous proximity, in terms of "speed and nearness" of the train to the crossing which words are used in section 86(c) to explain "immediate hazard." From this, plaintiffs conclude that visibility of the train is inseparable from the term, "hazardous proximity."

We regard the reasoning as unsound. We agree that, common to both sections 86(c) and 86(d), is the element of hazardous proximity. Because the element is common to both sections, it need be submitted only once as is illustrated by the trial court's submission of special issue 24 which was conditioned upon an affirmative finding on either special issue 22 which concerned section 86(c) or special issue 23

which concerned section 86(d). The argument fails to take note of the fact, however, that there is an element in each section which is not common to the other. The audible signal is an element of section 86(c) and the plain visibility of the train is an element of section 86(d). An audible signal, if given at the statutory point along the track can occur at one point along the track and the train may become plainly visible at another point closer to the intersection. Before a train may come into view, a whistle, bell or horn may alert one to slow down and get a vehicle under control so that when it does later come into view one can stop in time to avoid injury. Moreover, it cannot be said that a train is in hazardous proximity only if it is seen or heard as plaintiffs seemingly argue and as the special issue 14 assumes. A train may be in hazardous proximity by reason of its speed or nearness though unseen or unheard; or a train may be a mile away and be both plainly visible and emitting an audible signal but still not be in hazardous proximity. Moreover, the argument ignores the conjunction "and" in both sections. Section 86(c) speaks of an audible signal *and* immediate hazard; section 86 (d) speaks of a train that is plainly visible *and* in hazardous proximity. We conclude that plaintiffs' failure to obtain a finding that excused the contributory negligence established by the answers to special issues 22, 24, and 25 left a verdict that Castro was not excused from his contributory negligence under section 86(c).

We agree with the dissenting opinion of the court of civil appeals in the conclusion that a finding of excuse under section 86(c) may not be deemed as found in favor of the judgment even though the trial court rendered judgment for the plaintiffs. Southern Pacific established two independent grounds for Castro's contributory negligence, but the plaintiffs excused only one of them. Under those circumstances the additional finding cannot be deemed as found. Rule 279, Texas Rules of Civil Procedure; Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529, 531 (Tex. 1965).

We reverse the judgments below but we remand the cause to the trial court in the interest of justice. We recognize the procedural uncertainty in trying a case of this kind, because efforts to clarify the submission of special issues within the complex framework of section 86 of article 6701d have largely proved unavailing. Some of the problems inherent in the statute are analyzed in Calvert, Special Issues Under Article 6701d, Section 86(d), of the Texas Civil Statutes 34, Texas L.Rev. 971 (1956). The mixture of statutory and ordinary prudent man standards within the statute is highly confusing. The problems, as illustrated by this case, are further compounded by the law of negligence per se which Southern Pacific asserts against plaintiffs and permissible excuse for the violation which the plaintiffs assert.

This court recently wrote Christy v. Blades, 448 S.W.2d 107 (Tex.1969), in which we held that a violator of section 86, article 6701d, must request an issue and obtain a jury finding that he was excused from the violation when the excuse asserted is that of impossibility to comply after the train became plainly visible. In Hammer v. Dallas Transit Co., 400 S.W.2d 885 (Tex.1966), we had earlier held that a violator of a traffic statute did not need to obtain a jury finding on his claimed excuse. We held that upon his producing evidence of excuse the party who had the burden of persuasion on negligence had to obtain a finding on common law negligence. See also Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App.1952, writ ref'd n. r. e.).

We have regarded our decision in *Christy* as an exception to the *Hammer-Phoenix* rule and as one which was applicable within a narrow range. It was limited by the nature of the excuse, that of impossibility, and also by the nature of section 86, article 6701d, which we regarded as a complete substitution of a peculiar

statutory standard for that of the common law standard of care on the part of a motorist who approaches a railroad crossing. It now appears to this court that the bench and bar are experiencing difficulty in distinguishing between excuses and statutes which should be governed by *Christy* on the one hand and by *Hammer* and *Phoenix* on the other. Most traffic cases are manageable and understandable at the trial stage by adhering to the *Hammer-Phoenix* rule. Our decision in *Christy* departs from that practice with the result that we now have one method of jury submission for traffic accidents at railroad crossings and a different one for other kinds of traffic accidents. It is our opinion that we should adopt one rule or the other, and that the rule should apply uniformly to cases in which an excuse is asserted for the violation of penal statutes. We have concluded that the *Hammer-Phoenix* rule should govern the trial of railroad crossing cases as in other cases.

 The basic problem is that of properly placing the burden of persuasion on the excuse contention. That problem is clarified by a more accurate statement of the rule concerning negligence per se. The correct rule is well stated in Restatement (Second) of Torts § 288B (1965):

> (1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

It is the *unexcused* violation of a penal standard which constitutes negligence per se. This idea is found in Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 939 (1956), in the statement that the incorporation of common law rules "into statutory rules makes their violation, *if unexcused*, negligence per se, . . . ." The idea is also expressed in 2 F. Harper & F. James, The Law of Torts § 17.6, at 1010 (1956), "If the negligence per se rule is tempered by the doctrine of justifiable violation . . ., it

means that violation of a statutory standard is negligence per se in a civil case only in the absence of evidence tending to establish some excuse which the court will recognize." For one to prove negligence per se, therefore, he must prove (1) a violation of the penal standard, (2) which is unexcused. W. Prosser, Law of Torts § 36, at 200 (4th ed. 1971); Prosser, Contributory Negligence as a Defense to Violation of Statute, 32 Minn.L.Rev. 105 (1948).

This was the underlying reason for the rule announced in *Hammer* and *Phoenix*. An analogous situation was also presented in our decision in Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85 (1954), which was a suit for damages for an intentional tort under the wrongful death statute. Art. 4671, Vern.Tex.Civ.Stats. Matilda Vega sued Grieger for damages for wrongfully shooting her son. The statute accords such a right when the death "is caused by the wrongful act, neglect, carelessness, unskillfulness, or default of another." The trial court submitted only two issues, one of which was a damage issue. The other issue inquired whether the action of Fred Grieger in shooting and killing the deceased was wrongful. Since Grieger's defense to the action was that he had killed plaintiff's son in self-defense, which was justification for the shooting, the trial court gave a full definition of the term, "wrongful." The definition fully explained the nature of self-defense. In this posture of the charge, the plaintiff Vega had the burden of persuading the fact finder not only that Grieger shot her son, but also that he did not do so in self-defense. The jury refused to find that the shooting was wrongful. In upholding the submission of the issue which placed the burden on the plaintiff to overcome the evidence of self-defense, the court quoted March v. Walker, 48 Tex. 372, 377 (1877):

> But in this, as in every other case, it devolved on the plaintiff to establish his case, viz., that the killing was wrongful. If the evidence failed to show a wrongful killing, but whilst establishing

the act of killing, developed that it was done in the justifiable exercise of the right of self-defense, it is scarcely necessary to say that the verdict was wrong.

Our recent decision in Impson v. Structural Metals, Inc., 487 S.W.2d 694 (Tex. 1972), explained that any claimed excuse by one who has violated a statutory penal standard must fall within the permissibly limited classes there discussed, as illustrated by such excuses as impossibility, emergency, or incapacity.

■■ We conclude that the burden of persuasion is on the party who asserts that his adversary has been negligent per se by reason of his violation of a penal standard. In this case, in which defendant Southern Pacific asserts the contributory negligence per se of Castro, the burden of persuasion is upon Southern Pacific to prove a violation of a penal standard such as section 86, article 6701d. If, as in the case of March v. Walker, *supra*, the proof by Southern Pacific also includes some evidence that Castro's violation was excused by reason of one of the permissible excuses we discussed in *Impson, supra*; or if the plaintiffs produce some evidence of an Impson-type permissible excuse, Southern Pacific must do something more to discharge its burden of persuasion. Southern Pacific must then request and obtain a finding on an issue which inquires whether Castro was contributorily negligent as measured by the common law or reasonable man standard. Issues in terms of excuse, such as special issues 14 and 15 set forth above, on which the violator had the burden to obtain favorable findings should not be submitted.

■ In connection with its common law contributory negligence issues, upon proper request, Southern Pacific will be entitled to a definition or instruction which informs the jury the Legislature has established a uniform standard of safe conduct for those who approach and cross railroad crossings. The court may state the provisions of sec-

tion 86, article 6701d. See Eubanks v. Colbert, 327 S.W.2d 457 (Tex.Civ.App.1959, writ ref'd n. r. e.). The court may further instruct the jury that Castro, as well as the whole public, was charged in law with knowledge of those safety provisions. The court may also give an appropriate definition or instruction concerning any excuse which is supported by some evidence and qualifies under the *Impson* rule.

We overrule our contrary holding in Christy v. Blades, *supra*, and we disapprove the language to the contrary in Rash v. Ross, 371 S.W.2d 109, 113–114 (Tex.Civ. App.1963, writ ref'd n. r. e.).

We reverse the judgments of the courts below and remand the cause to the trial court in the interest of justice.

Concurring opinion by WALKER, J., in which STEAKLEY, J., joins.

SAM D. JOHNSON, J., not participating.

WALKER, Justice (concurring).

While I concur in the judgment of reversal and remand, I am concerned about the "uniform" rules laid down by the Court for submitting a case in which the evidence will support the conclusion, but does not conclusively establish, that there was a legal excuse for an alleged statutory violation that would ordinarily constitute negligence per se. I have no quarrel with the holding that "the burden of persuasion on the excuse contention" is on the party who asserts that his adversary has been guilty of negligence per se in violating the statute. This is not, however, the "basic problem" in the submission of the case. The truly basic problem is whether the party having that burden may discharge the same by obtaining an affirmative answer to an inquiry that requires the jury to consider and decide the excuse issue, or whether we are to hold, as the Court apparently does, that the burden of negating excuse can never be discharged except by convincing the jury that the violator was guilty of negli-

gence by the common law standard. I do not agree with this holding, because it means that a case such as the present one, which involves an alleged violation of Art. 6701d, § 86, must be submitted in an unnecessarily complicated manner that is confusing to the jury and unfair to the parties.

There is much to be said for the method of submission approved in Hammer v. Dallas Transit Company, Tex.Sup., 400 S.W.2d 885, and Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892 (wr. ref. n. r. e.), and it can properly be used in most cases. In my opinion it should be used whenever the statutory standards will probably be recognized and applied by a jury of laymen in determining the care that should be exercised by a person of ordinary prudence under the same or similar circumstances. For example, the motorist in *Phoenix* had violated the statute that forbids driving on the left side of the highway. This was also true in *Hammer*. The truck driver in Taber v. Smith, Tex.Civ. App., 26 S.W.2d 722 (no writ), operated his vehicle after dark without lights.

The average layman recognizes that ordinarily it is both unlawful and imprudent to drive on the left side of the highway or to operate a motor vehicle on the highway after dark without lights. In each of the cases cited, therefore, it was reasonable to assume that the jurors would find the violator guilty of negligence unless they concluded that the violation was caused by a blowout, a sudden and unexpected failure of the lights, or some other excuse raised by the evidence. A finding of negligence would clearly mean that the jury had rejected the evidence of excuse relied upon by the violator. More importantly, a negative answer to the negligence issue could fairly be taken to mean that the jurors had concluded that there was justification or excuse for the violation. When that is so, the rights of the parties may properly be made to turn on the answer to an issue inquiring whether the violation constituted negligence by the common law standard.

This is not so, however, in the present case. Here we are dealing with statutory standards of conduct that are wholly arbitrary, and strict observance of all these standards in their every detail would not ordinarily be regarded as essential to an exercise of reasonable care. Under the provisions of Art. 6701d, § 86, the motorist is required to stop his vehicle "within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad" in any of the situations described in the statute. And yet a jury of laymen might well conclude that it is not imprudent or unreasonable for a motorist to stop his vehicle five or ten feet or even 65 feet from the nearest rail, and the jury could, for that reason alone, decide that a violation of the statute was not negligence under the common law standard.

When the statutory standards are not generally recognized and accepted in determining the care to be expected of a person of ordinary prudence, a question of excuse raised but not conclusively established by the evidence cannot fairly be resolved by the jury's answer to an issue inquiring whether the violator was guilty of negligence under the common law standard. There would be no problem, of course, if the negligence issue were answered in the affirmative. A finding that a motorist was negligent in failing to stop his vehicle within 50 feet but not less than 15 feet from the nearest rail can fairly be taken to mean that the evidence of excuse was not accepted by the jury. The problem is that a negative answer will not necessarily mean that the jury remains unpersuaded as to the absence of an excuse that is: (1) raised by the evidence, and (2) falls within the classes of excuses that are permissible under our opinion in Impson v. Structural Metals, Inc., Tex.Sup. 487 S.W.2d 694.

This problem will not be solved and may even be magnified by attempting to instruct the jury concerning the provisions of Art. 6701d, § 86, and excuses raised by the evidence that qualify under *Impson*. At best the instructions will simply enable the

jurors to consider the statute along with other evidence in determining whether the violator exercised ordinary care under the circumstances. At worst the instructions will confuse the jurors as to the real issues in the case and cause them to shape their answers to avoid finding anyone guilty of violating a criminal statute.

A negative answer to an issue inquiring whether the alleged violator was guilty of negligence by the common law standard may well mean simply that the jurors concluded: (1) that Art. 6701d, § 86 is wholly unreasonable; or (2) that, regardless of the statute, the exercise of ordinary care does not require a motorist to stop precisely within the limits of the area there prescribed; or (3) that the alleged violation was excused by some fact or circumstance that does not qualify under *Impson* or that is not even raised by the evidence; or (4) that the motorist should not be found guilty of violating a penal statute. It is for this reason the question of excuse cannot fairly be resolved by the jury's answer to an issue inquiring whether the motorist was negligent by the common law standard.

The parties to any case are entitled to a submission that will enable the jury to consider and decide the controlling issues of fact. In Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, it was held that whether a train was "plainly visible" and "in hazardous proximity" is to be determined from the standpoint of a person of ordinary prudence in the position of the motorist. We also held that an unexcused violation of the statute constitutes negligence per se. So long as the latter holding stands, and it is not openly questioned by the majority in the present case, the narrow issue of excuse will be of controlling importance when raised by the evidence. And yet under the method of submission now approved and required by the Court for railroad crossing collision cases, the party relying upon the statutory violation is denied a fair opportunity to have the jury consider and decide the excuse issue.

The only reason offered by the Court for today's decision is the importance of having uniform rules that can be applied in all cases where the evidence raises an issue of excuse. This reason is itself the source of some confusion to me. If the Court does mean that the rules announced today are to be uniformly applied in all cases, it seems to me that the submission of an ordinary automobile collision case will be unnecessarily complicated by the requirement that the jury be instructed concerning the provisions of the statute alleged to have been violated and the excuse raised by the evidence. If the Court does not mean for the rules to be uniformly applied, I suggest that the members of the bench and bar who "are experiencing difficulty in distinguishing between excuses and statutes which should be governed by *Christy* [v. Blades, Tex.Sup., 448 S.W.2d 107] on the one hand and by *Hammer* and *Phoenix* on the other" will now experience similar difficulty in distinguishing between statutes which should be governed by *Hammer* and *Phoenix* on the one hand and by the present case on the other.

It should be noted that the Court does not state or even suggest that the *Hammer* and *Phoenix* method of submission will be fair to both parties in cases involving a violation of Art. 6701d, § 86. This is understandable. The net result of requiring that the present case be submitted in the *Hammer* and *Phoenix* manner is that anything more than a scintilla of evidence of excuse, no matter how flimsy and incredible the evidence may be, will somehow nullify our holding in *McFerrin* and make the statutory violation only evidence to be considered by the jury in resolving the issue of negligence by the common law standard. If that is the effect intended by the Court, it is my opinion that our basic rules concerning negligence as a matter of law should be revised accordingly.

It is impossible, of course, to reconcile the majority holding with our decision in *Impson.* It was there held that excuse for the violation of legislative standards of

conduct cannot be established by mere proof that the violator acted reasonably, or exercised ordinary care, under the circumstances. The truck driver had attempted to pass an automobile by driving on the left side of the highway within 100 feet of an intersection in violation of Art. 6701d, § 57, Vernon's Ann.Tex.St. The jury might reasonably have concluded from the evidence that this conduct was reasonable under the circumstances. The driver had forgotten about the intersection. It was night, and the intersection was obscured by trees and houses. The sign warning of the intersection was small, and there was no dashed or solid line on the pavement to indicate a no-passing zone. We held, however, that an issue of excuse had not been raised, because there was no evidence of any legally acceptable "excuse or justification" similar to those mentioned in the Restatement of Torts, Second, § 288 A. In support of this holding, we cited the writings of Dean Page Keeton and Harper & James, and particularly their argument that to permit the exoneration from a statutory violation by mere proof of ordinary care is, in effect, to commit us to a simple common law negligence standard and authorize the jury to dispense with reasonable statutory requirements in every case *no matter how flimsy the excuse.*

Under our holding in *Impson,* an issue of excuse can be raised only by evidence of one of the excuses mentioned in the Restatement or something similar thereto. Under the holding in the present case, when some evidence of an Impson-type excuse is introduced, the holding in *Impson* goes out the window and the violator will be excused if he acted reasonably under the circumstances. The Court is thus saying: (1) that the violator will be held guilty of negligence as a matter of law unless he is able to produce some evidence of an Impson-type excuse; and (2) that once some (more than a scintilla of) evidence of an Impson-type excuse is introduced, *Impson* has no further application and the violation will be excused if the conduct was reasonable under the circumstances.

It seems quite anomalous to me that one person who violates a particular statute should be held guilty of negligence per se while another person who violates the same statute will have his conduct judged by the common law standard merely because there is "some evidence" of excuse.

There is a question in my mind as to whether the Court really means that when some evidence of an Impson-type excuse is introduced, the party relying on the violation *"must* then request and obtain a finding" that the violator was negligent by the common law or reasonable man standard. Is any other form of submission improper even though it fairly elicits findings on the issues raised by the evidence? A trial court might grant a request by the party relying on the violation for submission of issues dealing specifically with the alleged violation and the excuse raised by the evidence. This could be done because the judge concluded that the party was entitled to submission of the requested issues or that they should be submitted to obtain a clarification of the holding in the present case.

Let us suppose a case similar to this one in which the only excuse raised by the evidence is impossibility of compliance. If specific inquiries concerning the violation and the excuse are submitted, the case may reach us with jury findings that the driver of the automobile was guilty of a statutory violation when it was possible for him to stop as required by the statute. We will thus have jury findings of an unexcused statutory violation and the majority opinion tells us that this is negligence per se. Will the Court nevertheless hold that negligence on the part of the driver has not been established since there is no finding that he was negligent by the common law standard? I doubt it unless we abandon the negligence per se rule entirely. The trial court might submit, in addition to the specific issues mentioned above, an issue inquiring whether the driver was negligent under the common law standard and with the burden of proof on the railroad. If

that issue were answered by the jury in the negative, will the specific findings of an unexcused violation override, yield to, or conflict with the jury's refusal to find from a preponderance of the evidence that the violator was negligent by the common law standard? I do not know.

In the past year or so we have attempted, with some success I trust, to simplify the submission of cases to the jury. See Adam Dante Corp. v. Sharpe, Tex.Sup., 483 S.W.2d 452; Yarborough v. Berner, Tex. Sup., 467 S.W.2d 188. These decisions make it even more difficult for me to understand the holding in the present case. The alternatives open to us and the choice that should be made seem quite clear. The Court chooses to complicate the charge and confuse the jury with the provisions of a statute that is understood by few lawyers or judges and with instructions concerning excuse for violating the statute. Instead of including these statutory provisions and instructions in the charge, I would require the jury to consider and decide the excuse question by submitting a fairly simple issue. For example, impossibility of compliance, if raised by the evidence, could be submitted as follows:

> Do you find from a preponderance of the evidence that after the train became plainly visible and in hazardous proximity to the crossing, if it did, the plaintiff by the exercise of ordinary care could have stopped his automobile within fifty feet but not less than fifteen feet from the nearest rail of the railroad track?

I can think of no rational basis for requiring that the *Hammer* and *Phoenix* method of submission, as now modified by the Court, be used in a case involving an alleged violation of Art. 6701d, § 86. It complicates and lengthens the charge, tends to confuse the jury, and deprives the parties of a fair submission of a controlling and ultimate issue. If we must have uniformity at all costs, I would opt for the

submission of a separate issue or issues that enable and require the jury to consider and decide whether the statutory violation was unexcused. This method of submission, which was held in *Christy* to be essential in cases involving a violation of Art. 6701d, § 86, is fair to both parties and is considerably less cumbersome than the modified *Hammer* and *Phoenix* method now adopted by the Court.

STEAKLEY, J., joins in this concurring opinion.