**L. M. B. CORPORATION, Petitioner,**

v.

**Louis GURECKY, Respondent.**

**No. B–3802.**

Supreme Court of Texas.

Oct. 31, 1973.

Rehearing Denied Dec. 5, 1973.

Fulbright, Crooker & Jaworski, Arno W. Krebs, Jr., and Jerry V. Walker, Houston, for petitioner.

Kronzer, Abraham & Watkins, W. W. Watkins and W. James Kronzer, Houston, W. Jack Salyer, Bay City, for respondent.

POPE, Justice.

Louis Gurecky instituted this suit against L. M. B. Corporation for personal injuries he sustained in a collision between his vehicle and L. M. B.'s vehicle, which was being driven by Jose Gonzalez. Gonzalez was L. M. B.'s employee and was acting in the scope of his employment. The jury refused to make a finding that Gonzalez was negligent, but the trial court, believing that Gonzalez was guilty of negligence per se, rendered judgment for plaintiff Gurecky and the court of civil appeals affirmed the judgment. 489 S.W.2d 647. We granted the application for writ of error because the judgments of the courts below were ruled by our decision in Christy v. Blades, 448 S.W.2d 107 (Tex.1969), which case this court overruled a few days after the judgment of the court of civil appeals in this case became final. See Southern Pacific Co. v. Castro, 493 S.W.2d 491 (Tex.1973). We reverse the judg-

ments of the courts below and remand the cause to the trial court.

Plaintiff Gurecky was driving his vehicle in a westerly direction on Highway 35 in Matagorda County in the late afternoon of September 15, 1968. Gonzalez was driving a pickup truck in an easterly direction at a speed of sixty miles per hour. Gonzalez testified that his car began to weave by reason of a deflated tire, and when he applied his brakes, his car swerved to the left side of the highway and struck plaintiff's car on the shoulder of the road on his, Gonzalez's, wrong side of the road. Gonzalez's presence on the wrong side of the road was a violation of article 6701d, § 52, Vern.Tex.Civ.Stats., which requires a driver to drive upon the right half of the roadway. Gonzalez pleaded by way of an excuse for his presence on the wrong side of the road that he was faced by an emergency which he did not create. The relevant special issues submitted by the trial court and the jury's answers were:

No. 1: "Do you find from a preponderance of the evidence that on the occasion in question Jose Ascension Gonzalez failed to keep the pick-up truck completely within the right half of the roadway?" "We do."

No. 2: "Do you find from a perponderance of the evidence that such action was negligence?" "We do not."

No. 3: "Do you find from a preponderance of the evidence that such failure was a proximate cause of the occurrence in question?" "We do."

No. 4: "Do you find from a perponderance of the evidence that on the occasion in question Jose Ascension Gonzalez failed to make such application of the brakes as a person using ordinary care would have made?" "We do not."

The reasons which are suggested for the trial court's rendition of a judgment in fa-

vor of the plaintiff Gurecky notwithstanding his failure to obtain a jury finding that the defendant was negligent in some particular are (1) Gonzalez presented no evidence of any excuse for his being on the wrong side of the road, (2) evidence that a deflated tire caused the Gonzalez car to swerve to the left is not a permissible excuse which justified his being on the wrong side of the road, and (3) Gonzalez did not request an issue and obtain a jury finding that his claimed excuse in fact existed.

Contrary to the opinion of the court of civil appeals and plaintiff's contention, Gonzalez introduced some evidence of his claimed excuse. He testified that he was moving at about sixty miles an hour when he saw plaintiff's car at a distance he described as "approximately more than 400 feet." He said that his tire was punctured, after which he tried to control the car and stop. He testified that the pickup veered hard to the right and that there was a deep hole on his right, so that he tried to steer the pickup to stay on the highway. He said, "I was having a time." When asked if he decided to turn to the left where it was smoother, he answered, "All I was trying to do was to control my vehicle to keep it on top of the pavement." He said he did not make a brake application while his car was going to the right and that what happened "was very rapid." He said, "I was having trouble. It was weaving." After the accident, the pickup came to rest upside down. Some pictures of the tire appear in the record, and they do not show nor does it appear from the record that the tire blew out, although Gonzalez at one place in his testimony said that it did. Gonzalez said that he looked at the tire after the wreck and that the tube was cut in two. He said the tube was protruding out of the tire. A Texas Highway Patrolman who investigated the accident testified that he examined the tire shortly after the accident. He said that the tire was not cut but was intact. From all of this testimony, a jury could believe that the pickup was weaving on the road by reason of the deflated right rear tire, that things happened quickly, and that Gonzalez lost control of his car by reason of the low tire. Thus there is some evidence in the record of an excuse for Gonzalez's presence on the wrong side of the road.

Plaintiff Gurecky seeks to uphold the judgments for the additional reason that a deflated tire cannot fall within the limited range of permissible excuses which will justify one's violation of a legislative standard of conduct, as explained by our decision in Impson v. Structural Metals, Inc., 487 S.W.2d 694 (Tex.1972). We again disagree with plaintiff's contention. In *Impson,* this court called attention to some of the permissible excuses for violation of legislative standards by quoting from Restatement (Second) of Torts § 288A (1965). One such excuse which is there listed is that the actor is confronted by an emergency not due to his own misconduct. The excuse in Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ. App.1952, writ ref'd n. r. e.), which justified a driver's presence on the wrong side of the road was the blowout of a tire. The plaintiff would have us draw a distinction between a blowout of a tire and a puncture and deflation of a tire, as the creating factors of an emergency. In our opinion, some of the evidence in this case shows that the events and actions immediately before the impact of the two cars occurred in a matter of a few seconds. If the proof had shown that Gonzalez had been driving with a deflated tire at sixty miles an hour for a longer period of time, understandably the court could hold as a matter of law that the condition of the tire would not serve as an excuse for the pickup's swerving to the wrong side of the road. In our opinion, a suddenly deflated tire, even in the absence of a blowout, may constitute a permissible excuse for a car's presence on the wrong side of the road, and there is some evidence which supports that conclusion.

The third reason which the plaintiff Gurecky and the court of civil appeals give for upholding the trial court's disregard of the jury's refusal to find the defendant negligent is that the defendant, L. M. B., failed to request and obtain a finding on an excuse issue. That contention is entirely understandable, because our decision in Christy v. Blades, 448 S.W.2d 107 (Tex.1969), required such a finding. That case, however, was overruled by our decision in Southern Pacific Co. v. Castro, 493 S.W.2d 491 (Tex.1973). The rule in Texas is that one who seeks to excuse a statutory violation must present some evidence of a permissible excuse for his statutory violation, whereupon the party with the burden of persuasion on negligence (plaintiff Gurecky) must obtain a jury finding that his adversary was negligent as measured by the common law or prudent man standard.

In our opinion, the trial court properly submitted the common law negligence issue which inquired whether the defendant was negligent. The jury answered that issue favorably to the defendant. From the discussion above it is also our opinion that the courts below were in error in disregarding the jury's answer to that issue and rendering judgment for the plaintiff. We regard this, however, as a proper case for a remand for another trial rather than a rendition of judgment upon the verdict for the defendant. This court's decision in Castro substantially altered the method of submitting a case to a jury when a party claims an excuse for his violation of a statutory standard of care. We changed the practice not only in the manner of submitting special issues, but we also authorized more extensive instructions. We said that the trial court may inform the jury that the Legislature has established a uniform standard of safe conduct by stating the provisions of the statute and the court may also instruct the jury that the defendant as well as the whole public was charged in law with knowledge of those safety provisions. We said further that the court may give the jury an instruction or definition concerning any claimed excuse which is within the limits of Impson v. Structural Metals, Inc., 487 S.W.2d 694 (Tex.1972). These changes in the trial practice justify this court's remand of this cause to the trial court in the interests of justice. Scott v. Liebman, 404 S.W.2d 288 (Tex.1966).

The judgments of the courts below are reversed and the cause is remanded to the trial court.

STEAKLEY, J., dissents; WALKER and JOHNSON, JJ., join.

STEAKLEY, Justice (dissenting):

I had hoped that the thrust of our difficult decision in *Castro* [1] would be held under the restraint of our earlier decision in *Impson,* [2] as I understand *Impson.* I feel this is not so under the opinion of the majority. Obviously, just any so-called excuse will not do; otherwise, we have, in effect, abolished the doctrine of negligence per se.

Gurecky, the victim here, had vainly maneuvered his vehicle onto the right shoulder of his side of the highway before he was struck by the truck driven by Gonzalez. Gonzalez had crossed over the left side of the highway in an undisputed violation of statute. But the judgments below in Gurecky's favor have been reversed upon the holding that there was "some evidence in the record of an excuse for Gonzalez's presence on the wrong side of the road", thus invoking *Castro.* Under *Castro,* of course, the jury is not given the opportunity to explicitly determine whether the claimed excuse rested in reasonable fact.

The threshold problem is not whether Gonzalez was negligent. It is undisputed

1. Southern Pacific Co. v. Castro, 493 S.W.2d 491 (Tex.1973).

2. Impson v. Structural Metals, Inc., 487 S.W. 2d 694 (Tex.1972).

that he crossed over the left side of the highway in violation of statute when he ran down Gurecky. The problem is whether the evidence raises an excuse sufficient to get him out from under negligence per se, and under the rule announced in *Castro*.

The claimed excuse here is articulated by the majority to be that the "pickup was weaving on the road by reason of the deflated right rear tire, that things happened quickly, and that Gonzalez lost control of his car by reason of the low tire." As I read the testimony, and particularly that of Gonzalez, there is no probative evidence thus raising the issue of excusable neglect under the holdings in *Castro* and *Impson*; to the contrary, the causative factor of the statutory violation was not a deflated tire but a later and unnecessary decision by Gonzalez. The crucial point is, as I see it, that the conduct of Gonzalez in violation of statute was deliberate action of his own doing and, as stated in *Impson*, falls within the realm of due care. The collision was not the result of an emergency created by an excusable occurrence; it was caused by a statutory violation resulting from ill-advised and negligent conduct.

The circumstances as I understand them from the record were these. The collision occurred on Highway 35, in Matagorda County, Texas, on the afternoon of September 15, 1969. The highway is asphalt surfaced and consists of two lanes with an improved shoulder adjoining the outside of each lane. The highway is straight and over flat terrain in the area of the accident. The weather was clear. The surface of the highway was dry. Immediately preceding the collision, Gurecky was proceeding in a westerly direction and Gonzalez was proceeding to the east. As the two vehicles were approaching one another, the truck driven by Gonzalez crossed to the left side of the highway and collided with Gurecky's car. The point of impact was on the improved shoulder adjacent to Gurecky's right half of the roadway.

Gonzalez did not speak English and testified through an interpreter with some difficulty. He said that something went wrong with the right rear tire on the truck which gave him the feeling that it was a flat; that the truck veered to the right, whereupon he tried to avoid "a deep hole" and a ditch on the right side; that he pulled the truck to the left to keep from going toward the ditch on the right; and that he did not apply his brakes until he saw the approaching Gurecky automobile, at which time he was on the right side of the road. Gurecky and Gonzalez agree in their testimony upon the controlling circumstance that Gonzalez had regained his side of the road before the second crossing to the left and the ensuing collision. Gurecky testified that he saw the truck swing into his lane and thereafter return to the right side of the road; that he moved to his right to give as much clearance as possible; and that after getting back into the right lane the truck swung back to the left side of the road and to the shoulder of the highway where the collision occurred. Gonzalez also testified that he had left his lane when "having this trouble and went into the other lane, but I had pulled back. But, upon getting closer I had applied my brakes making my back end whip around and that car ran into me." At one point Gonzalez stated that he did not apply his brakes until he had pulled the truck back to the right and that "when I seen this car very close I applied my brakes"; and, further, that this was the first time he had applied the brakes. He also testified that the front end of his truck was on his side of the highway when he made the hard brake application.

The highway patrolman who was called to the scene and arrived within approximately 15 to 20 minutes stated that he examined the deflated tire and did not find any lacerations or holes to indicate that a blowout had occurred; he said "the tire was intact . . . no holes or anything." The officer also examined the markings remaining on the pavement which he said

established that the pickup did not make "a sharp swerve" but made a "gradual exit off the road."

It thus appears that the unexpected deflation of a tire set in motion a series of events during which Gonzalez made two operating decisions which brought about the statutory violation and the resulting collision with the Gurecky vehicle. The first was the decision to swing the truck to the left to avoid what Gonzalez referred to as a hole or a ditch on the right (about which there was no other evidence) toward which, he said, the truck had veered; the second was the decision to make a hard application of the brakes at a time when the truck was traveling on the right side of the road as required by statute.

It is manifest to me under the undisputed facts that the act of Gonzalez in making a hard application of the brakes occurred at a time when, under his own testimony, and apart from the initial distraction of the "feeling" of Gonzalez that the right rear tire had gone flat, he had successfully steered the truck back to the right and was traveling on his side of the highway. This was also the testimony of Gurecky. Both were in agreement that the truck had returned to and was traveling upon the right side of the highway after the initial veering to the right and the zigzagging from left back to right. So it seems apparent that Gonzalez had regained sufficient control of the truck to have avoided the statutory violation and ensuing collision. There was, in point of fact, a new traffic situation created by the ill-chosen brake application, and one that was the product of this particular action on the part of Gonzalez. Braking the truck in the manner attempted by Gonzalez was not required to keep it on the same and right side of the highway, and Gonzalez himself said that this caused the swerve to the left side of the highway and into the path of the Gurecky automobile.

In my view, justifiable excuse is not raised under these circumstances. *Impson* clearly forecasts in text, and in expressing agreement with the views of the dissenting Justice in the intermediate court, the strictness with which the evidence will be viewed in determining whether excuse for the violation of a penal statute is raised. The violation there was an attempt to pass an automobile within a prohibited distance of a highway intersection. The violator offered a number of excuses for the violation: that he could have passed the automobile before reaching the intersection had it not unexpectedly increased its speed; that there was no yellow stripe on the highway prohibiting him from passing; that it was dark and trees and a house obscured the intersection; that the highway sign was small; that although he was familiar with the highway, he did not recall the exact location of this particular intersection; and that since the automobile was on the extreme righthand side of the highway he did not believe it would turn left. In rejecting these as legally justifiable excuses for violation of a statute, we wrote:

> "All of the above matters fall within the realm of ordinary care,—or lack of care. The driver made his move deliberately, with knowledge of the law and with at least notice of the presence of the highway intersection. There was no impossibility, no reason for any particular hurry, no emergency, and no incapacity. The problem of greater risk of harm is not involved. If there was an emergency, it was only after the statutory violation had begun, and was due in large part to his own deliberate conduct." 487 S.W.2d 694 at 697.

Under the test thus indicated in *Impson*, the raising of justifiable excuse turns on whether the acts of the violator are deliberate and constitute a failure to exercise due care, or were responses impelled by and attributable to circumstances not of his own doing. This is an essential safeguard, since in the nature of the situation after-the-fact explanations and excuses are easy to come by, whether in good faith or con-

trived; and under the holding in *Castro,* the fact finder is not required to directly determine whether the alleged basis for the excuse contention rested in reasonable fact and was the cause of the violation. These considerations also require the rule that the sufficiency of the evidence of excuse is a preliminary matter for decision of the trial court. See Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (Tex.Civ.App.1952, writ ref'd n. r. e.). A blowout of a tire which is reasonably thought to be in good condition was mentioned in *Impson* as a situation that "could come" under category 2(d) of § 288A, Restatement (Second) of Torts (1965), as "an emergency not due to his own misconduct." However, this reference presupposed a traffic violation directly attributable to the blowout itself, and not caused, as here, by intervening operating acts not required by the initial unexpected occurrence, and but for which the statutory violation and resulting collision would not have occurred.

I would affirm the judgments below for Gurecky.

WALKER and JOHNSON, JJ., join in this dissent.